**In re Ken Lloyd PATTERSON and Janet Ruth Patterson, Debtors.**

**Ken Lloyd PATTERSON and Janet Ruth Patterson Appellants,**

v.

**FEDERAL LAND BANK, Appellee.**

BAP No. ID 87–1779–AsMeJ.

Bankruptcy No. 87–00785–F.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 19, 1988.

Decided May 17, 1988.

Brent T. Robinson, Ling, Nielsen & Robinson, Rupert, Idaho, for appellants.

Jim Pappas, Green, Service, Gasser & Kerl, Pocatello, Idaho, for appellee.

Before ASHLAND, MEYERS and JONES, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

Ken Lloyd and Janet Ruth Patterson appeal the bankruptcy court's finding that the appropriate discount rate pursuant to Bankruptcy Code § 1225(a)(5)(B)(ii) is the prime rate plus four percentage points for loans extending beyond five years. We affirm.

## FACTS

On March 16, 1987 the debtors filed their Chapter 12 petition. Federal Land Bank (FLB) is a creditor with a claim of $114,000 secured by a mortgage on 195 acres of the debtors' property. The debtors' Chapter 12 plan provided that FLB shall retain their lien on the property and be paid $114,000 with interest at the contract rate of 10% per annum paid in annual payments over 25 years.

Prior to confirmation of their plan the debtors filed a motion to determine the appropriate interest rate on FLB's claim. This motion came on for hearing on June 16, 1987. Testimony was heard from various witnesses, and the bankruptcy court took under advisement the motion to decide the issues of valuation and proper interest rate. The court entered its decision on July 15, 1987, and the debtors timely appealed.

## ISSUE

Whether the bankruptcy court erred in determining the interest rate, pursuant to 11 U.S.C. § 1225(a)(5)(B)(ii), to be the prime rate plus four percent for loans extending beyond five years.

## DISCUSSION

The determination of what factors to apply in a valuation calculation pursuant to 11 U.S.C. § 1225 is an interpretation of a statute which is reviewed de novo. *In re Benny*, 812 F.2d 1133, 1140 (9th Cir.1987). However, the application of these factors to a certain case is a question of fact which is reviewed under a clearly erroneous standard. *Ragsdale v. Haller*, 780 F.2d 794, 794 (9th Cir.1986).

Section 1225 of the Bankruptcy Code provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

\* \* \* \* \* \*

(5) with respect to each allowed secured claim provided for by the plan

\* \* \* \* \* \*

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim.

Similar language is used in Chapter 11 [§ 1129(a)(9) ] and Chapter 13 [§ 1325(a)(5) ]. Each section requires a de-

termination of the present value of a creditor's claim as of the effective date of the plan. Therefore, an interpretation of one section applies equally to the interpretation of the other sections. *In re Camino Landscape Maint. Contractors,* 818 F.2d 1503, 1505 (9th Cir.1987).

The debtors contend that the bankruptcy court applied a blanket approach to determining the interest rate under § 1225(a)(5)(B)(ii). The court stated that the rate was calculated as the prime rate "plus three percentage points for short term loan (sic) or, loans for less than five years maturity. Long term loans, or loans extending beyond five years shall be determined by adding four percentage points to the prime rate." The court then cited a decision rendered by it in June of 1987.

■ We agree with the debtors that a blanket approach is improper. A case-by-case determination of the interest rate is mandatory because it is calculated according to the rate the reorganizing debtor would have to pay a creditor in order to obtain a loan on equivalent terms in the open market. *See Camino* at 1508, interpreting the calculation of present value under § 1129(a)(9)(C).

One approach suggested by the Ninth Circuit in *Camino* is to start with the interest rate on a risk free investment, for example treasury bills, and adjust this rate according to the cost of deferring present use by the lender, the projected rate of inflation, and the risk of default. *Camino* at 1506.

*In re Welco Industries, Inc.,* 60 B.R. 880 (9th Cir.BAP 1986), suggests starting with the prevailing market rate for a loan equal to the payout period (the prime rate is a factor in this determination). This rate is then adjusted according to the quality of the security and the risk of subsequent default. *See also In re Southern States Motor Inns, Inc.,* 709 F.2d 647, 651–52 (11th Cir.1983).

In line with these cases a blanket approach should be rejected because it fails to consider the quality of the security and the risk of subsequent default. *See Welco* at 882 (the court cites *Southern States* in determining that 26 U.S.C. § 6621 is an inappropriate interest rate because it fails to consider variations in length of the payout period, quality of the security, and risk of default); *See also, United States v. Neal Pharmacal Co.,* 789 F.2d 1283, 1286 (8th Cir.1986) (an interest rate calculated without consideration of these factors was deemed improper).

However, here the court gave appropriate consideration to the important factors, for example, variation in the length of payout period, quality of the security, and risk of subsequent default. The court below heard testimony from four witnesses on these and other factors. In fact, the court's calculation of the discount rate directly parallels the testimony of one of the witnesses of FLB. We must therefore assume that the bankruptcy court did not use a blanket approach in calculating the discount rate.

■ The debtors contend that the bankruptcy court erred in using the prime rate as a basis for its interest calculation. The prime rate is "usually defined as the lowest rate of interest from time to time charged by a specific lender to its best customers for short term unsecured loans. The prime rate is often used as a measuring rod for interest rates on other loans." Black's Law Dictionary, West Pub. Co. 5th ed. 1979.

"Factors which influence the determination of prime are the general level of money rates, the availability of reserves, general business conditions, size and term of loan, geographic variations, elements of profit and collection costs." *Welco* at 883. Since the market rate is influenced by the prime rate, the prime rate may be used as a basis for an interest calculation. *See In re Lewis Industries,* 75 B.R. 862, 870 (Bankr.D. Mont.1987).

A further contention of the debtors is that a four percent increase for the risk factor is too high. Where, as here, the loan is a long term loan there is a higher risk of default. Of course, if the risk of default is too great the Chapter 12 plan should not be confirmed. 11 U.S.C. § 1225(a)(6). However, if the court has before it an otherwise feasible plan the court should adjust the interest rate to

reflect the risk factor. When the loan is for a 30 year term the risk factor must reflect this. Furthermore, the court used a prime rate as its basis. Because this is generally a lower rate than market it justifies a higher risk factor.

Lastly, the debtors contend that a fixed rate of interest rather than a variable rate should be applied. Here the bankruptcy court allowed for quarterly variations on the interest rate. At times a periodically adjusted rate may more accurately reflect market conditions. *Welco* at 883. For instance when the loan is a long term loan and, as here, is combined with the volatility of the agricultural economy an adjustable interest rate may be appropriate. We think a variable rate particularly appropriate because, although a plan may not provide for payments over a period exceeding five years [11 U.S.C. § 1222(c)], the plan may provide for payment of allowed secured claims consistent with § 1225(a)(5) over a period exceeding five years. 11 U.S.C. § 1222(b)(9).

We affirm.