In re BAR L O FARMS, WEST, an Oregon co-partnership, Bar L O Farms, Inc., Michael & Pamela Barlow, Ellis M. Barlow, Charles E. Barlow, partners, Debtors.

Bankruptcy No. 387–00682–F.

United States Bankruptcy Court, D. Idaho.

June 14, 1988.

**126**

W.F. Schroeder, Vale, Or., for debtors.

Jim Pappas, Green, Service, Gasser & Kerl, Pocatello, Idaho, for Federal Land Bank.

Stephen B. Fonda, Nyssa, Or., for Oran Rayburn & Sons.

Ronald Schoen, Trustee.

## MEMORANDUM DECISION

ALFRED C. HAGAN, Bankruptcy Judge.

The debtor has presented a Chapter 12 plan for confirmation. Objections to confirmation have been made by the Federal Land Bank of Spokane (FLB). The objections are:

1. The plan does not provide an adequate discount rate for the deferred payment of the allowed amount of the FLB claim.

2. The best interests of creditors test of 11 U.S.C. § 1225(a)(4) has not been satisfied.[1]

3. The FLB stock which debtors seek to redeem through the plan is not redeemable since the stock is not in the debtors' name.

4. The plan does not properly classify the various FLB claims as undersecured or oversecured.

## PLAN PROVISIONS

The plan contains provisions for the payment of the FLB secured claims in two sub-classifications. One claim is an obligation represented by the combination of five separate notes in the allowed amount of $355,370 to be paid over a period of forty years. The other obligation is in the amount of $143,980 and the plan provides for the payment of this claim also over a period of forty years. The proposed discount rate is 8%.

## DISCOUNT RATE

█ A case by case approach must be used to fix the proper discount rate and to determine the present value of the creditor's secured claim as of the effective date of the plan.[2] The analysis must include a consideration of all relevant factors including the quality of the security, and the risk of subsequent default.[3] An acceptable approach is the establishment of a base rate to which a risk factor, determined according to the facts of the particular case, may be applied.[4] The base rate to which the risk factor is added ought to be in the nature of a rate established for a relatively risk free loan which represents the prevailing market rate for a loan equal to the payment period. I take notice of the following facts existing as of June 15, 1988:

1. The prime rate is 9%

2. The treasury bond market rate for 30 year bonds is 8.81% A thirty year treasury bond issue bears a 9⅛% rate and is yielding 8.81% according to the secondary market reports.

3. The U.S. Treasury Department's bellweather 30 year bond was yielding 8.82%.

4. Posted yields on 30 year Federal Home Loan Mortgage Corporation and Federal National Mortgage Association

....

---

**1.** 11 U.S.C. § 1225 Confirmation of plan.
  (a) Except as provided in subsection (b), the court shall confirm a plan if—...
    (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

**2.** *In re Patterson,* 86 B.R. 226 (9th Cir. BAP 1988).

**3.** *Id.*

**4.** *In re Welco Industries* and *In re Camino Landscape Maint. Contractors.*

fixed rate mortgages are 9.97% and 9.98% respectively.

■ I can find no market data designating current rates for offerings exceeding terms of thirty years. The forty year term payment provision on the FLB secured obligations is a factor to be considered in the determination of the base rate. It can be assumed a forty year term would carry a higher rate than the above referred to 30 year obligations. Accordingly, in consideration of the foregoing factors, I find an appropriate base discount rate of 10% is applicable in this case.

In determining an appropriate risk factor taking into consideration the quality of the security and the risk of subsequent default, I find the quality of the security is high, and the risk of subsequent default is low. As concerns the latter finding, it would appear the debtor's plan is indeed feasible. It is further noteworthy that no showing of lack of feasibility has been made in this case. The debtor appears to be able to complete and perform the plan. The soundness of the security combined with the minimal probability of a potential feasibility problem result in a low risk factor. I find a 1% risk factor is applicable, thus making a total discount rate of 11% applicable to the determination of the present value of the FLB claims.

■ I will not deny confirmation of the plan solely because a fixed, as opposed to a variable, rate of interest is offered in the plan. *In re Patterson* 86 B.R. 226, (9th Cir. BAP 1988).

## BEST INTEREST OF CREDITORS TEST

· ■ According to the debtors' filed liquidation analysis, the debtor has an ownership interest in its assets, in addition to the allowed value of the secured claims, in the amount of $132,889. The proposed plan payments to unsecured creditors do not meet this amount, and thus FLB claims the requirements of 11 U.S.C. § 1225(a)(4) have not been met.

A review of the liquidation analysis reveals it was prepared by using various categories of assets to liabilities calculations. The category containing the $132,889 excess is a column limited to only part of the assets in the form of "liquid collateral". While the analysis would indicate the existence of such an excess of "liquid" assets over the secured interests in such assets, when the entire liquidation analysis is considered, the best interests of creditors test has been met.

## THE STOCK ISSUE

Debtors' plan provides the debtors will redeem, or return the stock to FLB for a credit on the FLB claim. FLB claims the debtors do not own the stock. Nevertheless, the debtors claim they will be able to cure any lack of interest problem which would preclude the redemption and credit. Assuming debtors will be thus able to comply with this provision of their plan, I will overrule this FLB objection to confirmation.

## THE CLASSIFICATION ISSUE

■ FLB has five loans secured by two parcels of property. The debtors plan proposes to "re-write" these five loans into two loans, each secured by one of the two parcels. According to the valuation findings, three of the FLB existing loans are oversecured and the remaining two loans are undersecured.

The plan proposes the first new loan in the amount of $355,370 be secured by tax lots 2200, 2300, 2700 and 2900. These tax lots secure the first four existing FLB loans, and a separate note and mortgage exists for each of the four lots. The second new note as proposed by the plan provides for a mortgage on tax lots 1700 and 1701. The allowed amount of the FLB claim on these two parcels is $1,432,980 as proposed in the plan, in accordance with the allowed amount of each claim as determined at the valuation hearings. The confusion comes in the consolidation of the existing five separate FLB loans into two new loans as provided by the plan, and the effect of such consolidation on the undersecured or oversecured status of the existing loans for purposes of treatment under the

requirements of 11 U.S.C. §§ 506(b) and 1225(a)(5)(B)(ii). The first three FLB loans, secured by tax lots 2700, 2200, and 2300, respectively, are oversecured, and thus FLB would be entitled to § 506(b) treatment. However, one of the loan interest rates is only eight percent and FLB objects to the retention of this rate since the loan is impaired as the plan calls for the extension of the loan term. The other two oversecured loans would be entitled to the contract interest rate of 12.25%, variable.

I thus conclude FLB is entitled to an interest rate of 12.25% variable on the $335,370 new loan since two of the four consolidated loans are oversecured and FLB is entitled to its contract rate of interest on these two loans. The interest rate of 11% previously determined in this opinion is the appropriate rate for the $143,980 loan, since no part of the present existing loan which is oversecured is consolidated into that loan.

Therefore, the plan in its present condition cannot be confirmed. Debtor will be afforded fifteen days by separate order to file an amended plan and notice the same for further confirmation hearing.