EUGENE A. WRIGHT, Circuit Judge:
The question is whether the bankruptcy court applied the correct cramdown rate in confirming a reorganization plan under Chapter 12 of the Bankruptcy Code.
BACKGROUND
John Fowler operates a ranch in Big Horn County, Montana. He petitioned for relief under Chapter 12 of the Bankruptcy Code, 11 U.S.C. § 1201-31. At the time of filing, he owed the Farm Credit Bank (FCB) approximately $159,000 on two 35-year variable rate promissory notes, and the Interstate Production Credit Association (IPCA) approximately $22,000 on a one-year note. FCB’s debt was secured by real property which the bankruptcy court valued at $125,595. IPCA had a security interest in Fowler’s livestock, farm equipment and machinery, and was fully secured.
After filing his bankruptcy petition, Fowler proposed a plan of reorganization. After hearing testimony regarding the appropriate cramdown rate of FCB’s and IPCA’s debt, and the plan’s feasibility, the bankruptcy court confirmed Fowler’s plan. See In re Fowler, 83 B.R. 39, 44 (Bankr.D. Mont.1987). The amount owed to FCB, to the extent of the value of the security, was to be repaid at 9.5% over 25 years. Interest was to be deferred during the first three years, resulting in negative amortization. The amount owed to IPCA was to be repaid at 9.5% over seven years. The court based the 9.5% interest rate on the prime rate at plan confirmation, 8.75%, plus a .75% risk factor.
FCB and IPCA appealed to the Bankruptcy Appellate Panel (BAP), but Fowler objected, and the appeal was heard in federal district court. The district court reversed the bankruptcy court’s interest rate determination in an unpublished order, and set the rate at 10.5%. It then remanded to the bankruptcy court to determine if the plan was feasible applying the “correct” interest rate.[1]
FCB and IPCA appeal the district court’s decision because they believe it erred in setting the rate at 10.5%. Fowler cross-appeals, arguing that the district court should have affirmed the bankruptcy court’s interest rate determination of 9.5%.
DISCUSSION
1. JURISDICTION
We first consider if this court has jurisdiction over the appeal.[2] We have jurisdiction over appeals from final orders of the district court reviewing final bankruptcy court orders. 28 U.S.C. § 158(d); In re Crevier, 820 F.2d 1553, 1555 (9th Cir.1987).
The bankruptcy court’s order confirming Fowler’s Chapter 12 reorganization plan was final, so the district court had jurisdiction. See In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1378 (9th Cir.1985) (an order confirming a Chapter 11 plan is final). We must determine if the district court’s order reversing the bankruptcy court and remanding for further proceedings is a final appealable order.
This case is similar to Pizza of Hawaii, where we asserted jurisdiction over an ap *696 peal from a district court’s order reversing the confirmation of a Chapter 11 plan and remanding to the bankruptcy court to consider, among other things, the plan’s feasibility. 761 F.2d at 1376-78. As in Pizza of Hawaii, we have jurisdiction over this appeal.[3] See also In re Stanton, 766 F.2d 1283, 1288 n. 8 (9th Cir.1985) (indicating that we should assert jurisdiction if the case presents a central legal issue, the resolution of which would materially aid the disposition of the case on remand); United States v. Arnold, 878 F.2d 925, 926 n. 2 (6th Cir.1989) (asserting jurisdiction in a Chapter 12 interest rate determination appeal where “there are no factual determinations relevant to the issues to be made by the bankruptcy court upon the district court’s remand”).
II. DETERMINATION OF CRAMDOWN INTEREST RATE
In this case, we interpret the cramdown provision under Chapter 12 of the Bankruptcy Code, which provides in relevant part:
(a) except as provided in subsection (b), the court shall confirm a plan if—
[[Image here]]
(5) with respect to each allowed secured claim provided for by the plan— * * * * * *
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim.
11 U.S.C. § 1225(a) (emphasis added).
A. Standard of Review
We review the district court’s decision de novo. In re Camino Real Landscape Maintenance Contractors, Inc., 818 F.2d 1503, 1505 (9th Cir.1987). We review the bankruptcy court’s findings of fact for clear error, and its conclusions of law de novo. Id.
The BAP has summarized the standard for reviewing a bankruptcy court’s Chapter 12 cramdown interest rate determination:
The determination of what factors to apply in a valuation calculation pursuant to 11 U.S.C. § 1225 is an interpretation of a statute which is reviewed de novo. However, the application of these factors to a certain case is a question of fact which is reviewed under a clearly erroneous standard.
In re Patterson, 86 B.R. 226, 227 (BAP 9th Cir.1988) (citations omitted). A bankruptcy court should be accorded substantial deference in making cramdown interest rate determinations. See Camino Real, 818 F.2d at 1508.
B. Determining the Cramdown Interest Rate
1. The “Market” Approach
We first must determine if the bankruptcy court’s use of a “market” approach in determining the cramdown interest rate was correct. A standard bankruptcy treatise explains the process used by the bankruptcy court in applying 11 U.S.C. § 1225(a)(5)(B), the Chapter 12 cram-down provision:
When the debtor’s plan proposes to pay a secured claim in deferred cash installments, the court must find that the present value of the proposed payments is not less than the allowed amount of the secured claim. In order to make this finding, it will be necessary for the court to apply a discount factor to the proposed stream of payments to determine the present value of those payments. This is typically accomplished by ascribing an interest rate to the allowed amount of the claim and by requiring *697 payment of the amount of the claim along with interest at the specified rate,
5 Collier on Bankruptcy ¶ 1225.03[4][c], at 1225-21 (15th ed.1989).
In Camino Real, we considered the appropriate interest rate on deferred federal tax payments under 11 U.S.C. § 1129(a)(9)(C) in a Chapter 11 reorganization. 818 F.2d at 1504. We adopted the case-by-case “market” approach:
The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default.
Id. (quoting 5 Collier on Bankruptcy ¶ 1129.03[4][f][i]).
Although Camino Real interprets § 1129(a)(9)(C) rather than § 1225(a)(5)(B), its analysis also applies in the Chapter 12 cramdown context. See Camino Real, 818 F.2d at 1504 n. 1 (indicating that the court’s analysis “will be useful to courts” in applying other similar statutes, although not citing § 1225(a)(5)(B) specifically); Patterson, 86 B.R. at 227-28; 5 Collier on Bankruptcy ¶ 1225.03[4][c], at 1225-21 (indicating that the present value requirement of § 1225(a)(5)(B) is identical to the present value requirement of other bankruptcy statutes, including § 1129(a)(9)). We join the BAP and two appellate courts which have considered this issue, and adopt the “market” approach in applying § 1225(a)(5)(B). Patterson, 86 B.R. at 228; Arnold, 878 F.2d at 930; United States v. Doud, 869 F.2d 1144, 1145-46 (8th Cir.1989).
The bankruptcy court correctly employed a “market” approach.
2. Methods of Determining a “Market” Cramdown Rate
“While the cases considering the issue are fairly uniform in agreeing that a market rate of interest is appropriate, the cases differ drastically in their interpretation of how a ‘market’ rate is to be determined.” 5 Collier on Bankruptcy ¶ 1225.03[4][c], at 1225-21. Courts have used two approaches.
One is for the court to determine the current market interest rate for similar loans in the region. See, e.g., Memphis Bank & Trust Co. v. Whitman, 692 F.2d 427, 431 (6th Cir.1982) (interpreting the identical cramdown provision in Chapter 13); In re Shannon, 100 B.R. 913, 938-39 (S.D. Ohio 1989) (indicating that “this approach is the most widely held among the courts in various jurisdictions”). Under this approach, the court sets the cramdown rate by taking testimony on current market rates regarding loans for the length of time involved secured by the type of property involved. 5 Collier on Bankruptcy ¶ 1225.03[4][c], at 1225-22.
The second method for determining the appropriate market rate is the use of a formula. Under this approach, the court starts with a base rate, either the prime rate or the rate on treasury obligations, and adds a factor based on the risk of default and the nature of the security (the “risk factor”). . See, e.g., Patterson, 86 B.R. at 228; Shannon, 100 B.R. at 937. We approved the use of the formula approach in Camino Real. 818 F.2d at 1508.
In assessing the risk of default, we recognize that the risk is reduced to some extent in Chapter 12 plans. As one court has noted:
Since a trustee oversees the affairs of the debtor, administrative and collection costs are lower. Furthermore, the confirmation of a Chapter 12 plan implies that the debtors have convinced the bankruptcy judge that the plan is feasible. The fact that the plan overcame such a hurdle heightens the probability of repayment.
Shannon, 100 B.R. at 939 (citation omitted). On the other hand, the risk is heightened somewhat based, for example, on the unpredictable nature of the agricultural economy. See Doud, 869 F.2d at 1145 (noting that, under the facts of that case, risk is also heightened because of the additional collection costs creditors will incur in the *698 event of a Chapter 12 plan failure under Iowa law). See also Patterson, 86 B.R. at 228 (where the debt is long-term, there is a higher risk of default).
The formula approach requires the court to assess the risks associated with a given debtor and the security associated with a specific debt. Nevertheless, evidence of market interest rates for similar loans is relevant in arriving at the appropriate risk factor. See 5 Collier on Bankruptcy 111225.03[4][c], at 1225-23 (stating that the use of a formula should be only a presumption, and that courts “should always allow the parties to introduce evidence of market rates to rebut the presumption”).
Having heard testimony regarding both the market interest rates in the region and the risks associated with this debtor, the bankruptcy court used the formula approach, taking the prime rate on the date of plan confirmation, 8.75%, and adding a .75% risk factor. Fowler, 83 B.R. at 43. It did not err in using this approach to determine the cramdown interest rate.
C. Application of the Formula Approach
We next determine if the bankruptcy court applied the formula approach correctly. In support of its risk factor determination, it said:
The risk factor is fixed by reason of the fact that the Debtor’s testimony shows the Plan payments can easily be made to the secured creditors as proposed, and thus the risk of default is minimal. Further, [I] PCA is fully secured on its debt.
Id. We are unable to determine if the .75% risk factor is clearly erroneous for two reasons.
First, the court did not explain how it arrived at the .75% risk factor. There is no evidence to support that figure. The court heard testimony from an agricultural economist that the appropriate market interest rate was prime plus 4%.[4] Fowler himself said that prime plus 2% would be a “fair” interest rate. At a minimum, the court was required to explain the basis for its determination that .75% was an appropriate risk factor in this case. See Camino Real, 818 F.2d at 1508 (approving a bankruptcy court’s interest rate determination when it increased the treasury bill rate by 2% for risk and reduced it by 1% to account for the security).
Second, the court made insufficient findings as to the risks associated with Fowler’s reorganization plan and the nature of the collateral securing the debts. In reaching its conclusion that the risk of default was “minimal,” it did not make findings with reference to evidence in the record that indicated a heightened risk of default in this case.[5]
Although the bankruptcy judge found that Fowler’s reorganization plan was feasible, there was evidence that it was, at best, marginal. Fowler himself indicated that his revenue projections depended in part on sheep which belonged to his wife rather than to him, and that his expense projections did not include personal living expenses, income taxes, or utility expenses. Finding that a reorganization plan is feasible does not necessarily mean that the risk of default is small.
The bankruptcy court also failed to make sufficient findings in evaluating the security. It noted merely that IPCA was fully secured, without examining the nature of the collateral securing FCB’s and IPCA’s debts.
We are unable to determine (1) the basis for the bankruptcy court’s .75% risk factor; (2) whether the court considered the evidence in the record which pointed to a heightened risk of default, and (3) whether it considered the nature of the security. *699 See Doud, 869 F.2d at 1146 (“If the bankruptcy court has correctly considered all of the elements involved in computing a discount rate, determination of the proper discount rate in a particular case is a factual inquiry.”). We must remand for more specific findings.
D. The District Court’s Decision
The district court found that the interest rate set by the bankruptcy court was wrong, but instead of remanding for a re-determination, it set the rate at 10.5%. There was no basis for such a conclusion. We reject that interest rate determination for the same reasons we reject the bankruptcy court’s.
III. CONCLUSION
We reverse the district court’s decision, and remand to the bankruptcy court.[6] On remand, the court should consider the evidence in the record in determining the appropriate risk factor, including information on market rates. It should consider also the facts in the record which reduce and heighten the risks associated with this debtor.
After considering these matters, it should make explicit findings regarding how it assesses the risk of default and the nature of the security, and explain its reasons for applying a specific risk factor. The court’s findings and explanations should be explicit enough so that we are able to perform a meaningful review of the cramdown interest rate determination.[7]
To the extent necessary to make a proper determination of the cramdown rate, the bankruptcy court should engage in additional fact-finding.
REVERSED AND REMANDED.

. The district court also remanded for an award of post-petition interest under 11 U.S.C. § 506(b) to IPCA because the value of its collateral may exceed its debt plus accrued interest. This matter is not an issue on appeal.

. This issue is not raised by the parties, but we consider it sua sponte. In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1377 (9th Cir.1985).

. Because the court in this case set the cram-down interest rate and remanded for a feasibility determination, we need not decide if we would have appellate jurisdiction in the situation where the district court (or BAP) remands for a determination of the appropriate cram-down rate. See In re Schneider, 873 F.2d 1155, 1156-57 (8th Cir.1989) (reversal of bankruptcy court determination of interest rate in Chapter 12 plan was not a final order where district court remanded with directions to determine an appropriate fixed discount rate).

. This economist testified that the prime plus 4% rate was based on variable, as opposed to fixed, interest rate loans in the relevant market. FCB and IPCA do not argue that the bankruptcy court erred in failing to apply variable interest rates in this case. We do not decide that issue. See Patterson, 86 B.R. at 229 (approving the use of variable interest rates in Chapter 12 cram-downs).

. Because the findings were inadequate, we are unable to determine whether the bankruptcy court’s conclusion that the risk of default was minimal in this case is clearly erroneous.

. Because we remand for redetermination of the cramdown interest rate, we do not consider FCB’s and IPCA’s argument that the district court erred in imposing negative amortization. We note, however, that most courts which have considered the issue outside the Chapter 12 context have refused to place a blanket prohibition on negative amortization. See, e.g., In re D & F Constr. Inc., 865 F.2d 673, 676 (5th Cir.1989); In re Spanish Lake Assocs., 92 B.R. 875, 878 (Bankr.E.D.Mo.1988). But see In re McCombs Properties VIII, Ltd., 91 B.R. 907, 911 (Bankr.C.D.Cal.1988) (holding that Congress did not intend to allow the deferral of any portion of the current interest payment under the "fair and equitable” test in Chapter 11).

. Our intention is not to require findings on every issue discussed in this opinion in every cramdown case. Nor do we intend to limit the relevant factors requiring findings to those discussed in this opinion. The extent of findings required will vary depending on the circumstances of each case and the evidence presented in the bankruptcy court. The guiding principle is that the bankruptcy’s court’s findings must be sufficient to allow meaningful review, and must demonstrate to the reviewing court that the bankruptcy judge’s determination was supported by the evidence.