**In re Lewis J. BUSCONI, Debtor.**

**Bankruptcy No. 91–40290.**

United States Bankruptcy Court,
D. Massachusetts.

June 26, 1992.

Bruce Smith, Jager, Smith, Stetler & Arata, Boston, Mass., for debtor.

Paul D. Moore, Choate, Hall & Stewart, Boston, Mass., for Shawmut Bank.

FINDINGS AND CONCLUSIONS ON MOTION OF SHAWMUT BANK, N.A. FOR RELIEF FROM AUTOMATIC STAY

JAMES F. QUEENAN, Jr., Chief Judge.

Shawmut Bank, N.A. (the "Bank") is a secured creditor of Lewis J. Busconi (the "Debtor") by virtue of a first and second mortgage on the Debtor's real property. On January 21, 1992, the Bank filed a motion to vacate the automatic stay under section 362 of the Bankruptcy Code (the "Code") against the Debtor. On April 15, 1992, I held an evidentiary hearing on the motion, which was based on both § 362(d)(1) and (d)(2).

The Debtor's plan proposes a cramdown of the Bank's secured claim. Under § 1129(b)(2)(A) the Debtor must propose a stream of payments to the Bank having a present value of the Bank's secured claim. During the hearing a dispute arose as to the appropriate interest rate the Debtor would have to pay the Bank in such a cramdown plan. The interest rate to be paid affects the feasibility of the Debtor's proposal, and the proposal's feasibility in turn impacts upon whether the property is necessary to an *effective* reorganization under § 362(d)(2).

The property in question is the Bancroft building located in Worcester, Massachusetts. The Bancroft is a mixed use commercial and residential building. The Bank debt arises out of two loans made by Shawmut to Elgart and Zuker, trustees of the Bancroft Associates Realty Trust ("Trustees"). The first loan was to finance the Trustee's purchase of the Bancroft from the Debtor, and the second loan was given to make improvements. The Debtor had also taken a mortgage on the property to help finance the purchase. In September, 1990, the Debtor acquired the Bancroft as part of a workout when its debt from the Trustees was in default. The Debtor discharged his mortgage and took the property subject to the Bank debt.

The parties have stipulated that the value of the Bank's mortgage interest is $4.3 million and that its total claim is about $5.4 million. The Debtor proposes to pay the secured claim with a five year balloon note having an interest rate of eight percent. The Debtor apparently added one and a half percent to the prime rate in arriving at this number. Shawmut asserts that the appropriate interest rate to be used in calculating the value of the stream

of payments is ten and one-half percent, which is the market rate and Shawmut's rate charged to good customers for commercial real estate loans.

The Debtor asserts that the Bank is entitled only to payments equalling the present value of its secured claim. The statute itself refers only to payments of a "value" of the claim. There is no requirement, says the Debtor, that the Bank receive a competitive, or market, rate of interest which provides a profit and takes into account the risk of nonpayment. The Debtor asserts that ability to make the payments is irrelevant because a confirmed plan of reorganization will have been found to be feasible.

One case espousing this view is *In re Computer Optics, Inc.*, 126 B.R. 664 (Bankr.D.N.H.1991). The bankruptcy court rejected the bank's request for a market interest rate in cramdown, considering the risk of nonpayment and history of the borrower. The court believes that looking at debtor history defeats the purpose of chapter 11 which is the fresh start. It concluded that the proper rate is a "riskless" interest rate plus upward adjustment for risk depending on how certain the court is as to plan feasibility. In *In re Klein*, 10 B.R. 657 (Bankr.E.D.N.Y.1981), the court rejected the contract rate of interest because that rate includes profit to the creditor.

Although this view has some merit, it goes against the great weight of authority and seems patently unfair to secured claimants. Every circuit court of appeals addressing this issue has held the market rate of interest to be appropriate for payment streams in a cramdown. Although many of these cases have dealt with chapter 12 or 13 plans, the applicable statutory provisions are analogous to § 1129(b)(2)(A). *See United States Dept. of Agriculture v. Fisher (In re Fisher)*, 930 F.2d 1361 (8th Cir.1991) (debtor not entitled to cramdown secured lender at below market, contract interest rate); *Farm Credit Bank of Spokane v. Fowler (In re Fowler)*, 903 F.2d 694 (9th Cir.1990) (market rate of interest to be used, computed as prime rate plus a risk factor); *Hardzog v. Federal Land Bank of Wichita (In re Hardzog)*, 901 F.2d 858 (10th Cir.1990) (chapter 12 plan should use market rate of interest for similar loans in the region, absent special circumstances); *U.S. v. Arnold*, 878 F.2d 925 (6th Cir.1989) (creditors entitled to market rate of interest for new loan, under § 1225(a)(5)(B)); *U.S. v. Doud*, 869 F.2d 1144 (8th Cir.1989) (Treasury bond rate plus risk factor); *In re Southern States Motor Inns, Inc.* 709 F.2d 647 (11th Cir. 1983) (26 U.S.C. § 6621 interest rate inappropriate because it lags behind market rate and ignores terms of payout and risk).

Providing a market rate of return for the debtor is a matter of fairness. An undersecured creditor should not be denied compensation for profit and risk of nonpayment in a cramdown. Finding a plan of reorganization feasible does not suggest the absence of any risk of nonpayment. The reorganized debtor should not be hobbled by its faltering past, but neither should it continue to be subsidized by a secured claimant.

I conclude that the appropriate interest rate for the Debtor to use in the proposed cramdown is ten and one-half percent, the rate requested by the Bank as the market rate for a good, commercial loan.

The Debtor demonstrates no ability to pay the ten and one-half percent in the cramdown. The Bank's motion should therefore be allowed under § 362(d)(2). A separate order has issued.