**In re Paul D. BAGNE, Debtor.**

**Bankruptcy No. 97–26493–A–13.**
**Motion Control No. SPS–3.**

United States Bankruptcy Court,
E.D. California,
Sacramento Division.

March 27, 1998.

---

Raymond F. Burton, Jr., Auburn, CA, for Debtor.

David E. Pinch, Paul H. Cram, III, Polk, Scheer & Prober, San Rafael, CA, for Creditor Beneficial California, Inc.

## MEMORANDUM OF DECISION

DAVID E. RUSSELL, Chief Judge.

Paul D. Bagne (the Debtor) filed a voluntary petition under chapter 7 of the United States Bankruptcy Code in April, 1997. On June 20, 1997, the Debtor converted his case to chapter 13 and simultaneously filed a proposed chapter 13 plan. A creditor, Beneficial California, Inc. (Beneficial), objected to confirmation of the plan. After a hearing, the court ordered further briefing and took the matter under submission.

## FACTUAL BACKGROUND

The Debtor has two loans outstanding with Beneficial, both secured by his residence in Grass Valley, California. The first loan is an "Open End Credit Account" agreement which the parties entered into in August, 1992. The Debtor obtained an initial disbursement of $75,000.00 under this agreement, which provides for interest at a rate of 10.5% and an "amortization basis" of 360 months (a thirty-year term).[1] All advances

under the agreement are secured by a first deed of trust on the Debtor's residence.

The parties entered into a second loan agreement on December 14, 1994. This loan has a five-year term. Beneficial provided the Debtor with $10,128.14 and the Debtor agreed to pay back this amount, with interest at 21.0%, in equal monthly installments over a five-year period beginning on January 19, 1995, and ending on December 19, 1999. Beneficial secured this loan with a second deed of trust on the Debtor's residence.

Prior to filing his bankruptcy petition, the Debtor fell into arrears on both loans. However, both remain comfortably oversecured; the Debtor values his residence at $125,-000.00 while total encumbrances are less than $100,000.00.[2]

The Debtor's chapter 13 plan addresses the two loans as follows. As for the first loan (the thirty-year loan), the Debtor intends to stay current on the principal amount with payments made directly to Beneficial, while curing the arrearage with payments made through the plan. The Debtor's plan provides for interest on the arrearage at a rate of 10.0% per annum.

As for the second loan (the five-year loan), the Debtor intends to extend the term of the loan beyond its original due date but not beyond the life of the plan. The Debtor will pay off the entire amount of the loan (the arrearage and principal) with payments made through the plan. The Debtor proposes to pay interest on all outstanding amounts at a rate of 10.0% per annum.

Beneficial objects to the Debtor's proposal contending it should receive interest at the respective contract rate for each of the two amounts; that is, Beneficial argues it should receive 10.5% interest for the arrearage on the thirty-year loan and 21.0% interest for all amounts due on the five-year loan.

---

1. The amortization basis is defined in the agreement as "the time period in months during which, if each Payment Amount is paid on the Due Date specified on the Statement of Account, the Unpaid Balance and applicable Finance Charge will be fully repaid."

2. In addition to the two loans owed to Beneficial, the Debtor owes property taxes of approximately $3,900 to the Nevada County Tax Collector, which are also secured by his residence.

## DISCUSSION

Chapter 13 enables individual debtors to reorganize their financial affairs by extending due dates and by servicing their debts out of future income. *Young v. Key Bank of Maine (In re Young)*, 66 F.3d 376, 377 (1st Cir.1995). Central to the reorganization scheme of chapter 13 is the so-called "cram down" power found in § 1325(a)(5)(B), which allows a debtor to modify the terms of an existing secured loan. *Associates Commercial Corp. v. Rash*, —— U.S. ——, ——, 117 S.Ct. 1879, 1882, 138 L.Ed.2d 148 (1997). So long as the creditor retains its lien and the debtor provides the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, the debtor may retain the collateral securing the loan notwithstanding the creditor's objections to the plan. *Id.*

### A. THE THIRTY–YEAR LOAN

■ Congress, however, limited the ability of a debtor to modify a loan secured solely by the debtor's principal residence. *See* § 1322(b)(2). This special protection for residential mortgagees from the debtor's power to modify a secured loan was intended by Congress to encourage the flow of capital into the home lending market. *See Nobelman v. American Sav. Bank*, 508 U.S. 324, 332, 113 S.Ct. 2106, 2112, 124 L.Ed.2d 228 (1993) (Stevens, J. concurring). Thus, the general rule is that a debtor may not modify a home mortgage loan in a chapter 13 plan. *Id.* at 332, 113 S.Ct. at 2111.

■ There are exceptions to this general rule, and one is found in § 1322(b)(5). If the debtor has fallen behind on a long-term home mortgage, § 1322(b)(5) provides a debtor with the opportunity to rehabilitate the loan and retain the advantage of a contract payment period that exceeds the length of the plan term. *Nobelman*, 508 U.S. at 330, 113 S.Ct. at 2110. To do so the debtor must "maintain" the contract payment schedule of the loan. Additionally, the debtor must "cure" his default on the mortgage in a rea-

sonable time. However, the amount of the default is excepted from the prohibition against modification, so the debtor need not immediately proffer a lump sum to the creditor to pay off the entire default. Instead the debtor can spread the payment of the default over an extended period of time—the plan term—greatly enhancing the prospects for financial rehabilitation and retention of the family homestead.

The bifurcation of a creditor's claim into two separate claims—the underlying debt and the arrearage—by means of § 1322(b)(5) also answers the question of what interest rate applies to each of the two amounts. As for the unmatured principal, because payments on the underlying debt are simply "maintained" according to the mortgage documents, the rate of interest applicable to the principal is also controlled by the mortgage documents. That is, the contract rate of interest controls. In the present case, the debtor intends to maintain the contract with direct payments to Beneficial on the remaining balance of the loan at the applicable contract rate of interest of 10.5%, thus this aspect of the Debtor's plan is in conformity with the Code.

■ Turning to the "cure" of the arrears, the Supreme Court has explained that this default amount, by virtue of § 1322(b)(5), is excepted from the prohibition against modification found in § 1322(b)(2). *See Rake v. Wade*, 508 U.S. 464, 468–69, 113 S.Ct. 2187, 2190, 124 L.Ed.2d 424 (1993). As a secured claim, it may be modified pursuant to § 1325(a)(5). Thus the appropriate rate of interest on the arrearage claim is the rate necessary under section 1325(a)(5) to provide the creditor with a payment stream with a present value equal to the default amount. *Id.*, at 475, 113 S.Ct. at 2193.[3]

■ In *Rake*, the Supreme Court expressly left open the question of what interest rate ensures that a creditor receives the present value of its secured claim. *Rake*, at 472 n. 8, 113 S.Ct. at 2192 n. 8. The Ninth Circuit,

---

**3.** Congress overruled this aspect of *Rake* with the addition of Code section 1322(e) in 1994. Section 1322(e), however, only applies to contracts entered into after October 22, 1994. *See* Act Oct.

22, 1994, P.L. 103–394, Title VII, § 702, 108 Stat. 4150. The parties entered into the thirty-year loan in August, 1992.

however, has addressed the question and has stated that the bankruptcy court "must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default." *Farm Credit Bank of Spokane v. Fowler (In re Fowler)*, 903 F.2d 694, 697 (9th Cir.1990) (emphasis added) (internal quotation omitted).[4] Thus, for contracts entered into prior to October 22, 1994 (*see* footnote 3), if a debtor seeks to cure the arrearage over the life of a plan by means of § 1325(a)(5), the debtor's plan must provide for a market rate of interest on the arrearage.

The *Fowler* court also addressed the method that the court may use to determine the "market rate." The *Fowler* court endorsed the "formula approach." Under this approach:

the court starts with a base rate, either the prime rate or the rate on treasury obligations, and adds a factor based on the risk of default and the nature of the security (the "risk factor").... ¶ The formula approach requires the court to assess the risks associated with a given debtor and the security associated with a specific debt. Nevertheless, evidence of market interest rates for similar loans is relevant in arriving at the appropriate risk factor.

*Fowler*, 903 F.2d at 697–698.

■ Here, Beneficial has asked the court (in the alternative to receiving the contract rate of interest on the arrearage) to hold further evidentiary hearings to determine the rate of interest that the Debtor could obtain in the market place on a loan of the type proposed by the Debtor's plan. Beneficial's request shall be granted. The *Fowler* court made it clear that, when disputed, a finding with respect to the market rate of interest must be premised on evidence in the record. The parties will have an opportunity to present evidence on: (1) the risks associated with the reorganization plan; (2) the quality of the security for the loan; (3) the rate of interest on treasury obligations of like maturity; and (4) market rates of interest for

loans of a nature similar to that proposed by the Debtor's plan.

## B. THE FIVE–YEAR LOAN

### 1. SECTION 1322(c)(2)

As discussed above, § 1322(b)(2) generally prohibits a debtor from using § 1325(a)(5) to modify a loan secured solely by the debtor's principal residence. *Nobelman*, 508 U.S. at 332, 113 S.Ct. at 2111. Section 1322(b)(5) provides an exception to this rule allowing a debtor to cure a default on a long-term mortgage over the term of the chapter 13 plan. *Nobelman*, at 330, 113 S.Ct. at 2110. Another exception to the general rule is found in § 1322(c)(2). It states:

(c) notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a) of this title.

11 U.S.C. § 1322(c)(2).

■ The parties agree that this section provides an exception to § 1322(b)(2), but they disagree on its scope. The Debtor contends the section allows him to provide for the loan in conformity with § 1325(a)(5) which requires a market rate of interest, not the contract rate. Beneficial, however, argues that § 1322(c)(2) only allows the debtor to modify the loan by extending the term of the note; according to Beneficial, all other terms of the contract must be retained. The court concludes the Debtor's reading is correct.

■ In construing a statute, the court begins, of course, with the statute itself. *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Where the statute's language is plain, the sole function of the court is to

---

**4.** *Fowler* is a chapter 12 case. However, the statute interpreted in *Fowler*, § 1225(a)(5), is nearly identical to § 1325(a)(5). Moreover, the *Fowler* court indicated it was appropriate to transplant its reasoning to other chapters of the Code. *Fowler*, 903 F.2d at 697.

enforce it according to its terms. *Id.* Additionally, the language of the statute is presumed to be used in its ordinary and usual sense, and its meaning will typically heed the commands of its punctuation. *U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 454, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993).

Here, a plain reading of § 1322(c)(2) supports the Debtor's position. As stated above, the protection for home mortgagees is found in § 1322(b)(2). Section 1322(c)(2), however, provides an exception to this rule in its introductory language. It states: "notwithstanding subsection [1322] (b)(2)" the debtor may apply § 1325(a)(5) to the creditor's claim. Plainly, this language instructs the court to disregard § 1322(b)(2). If the claim meets the criteria that the "last payment on the original payment schedule" is due "before the final payment under the plan is due," the treatment of it must conform to the provisions of § 1325(a)(5), and § 1325(a)(5) requires a "market rate" of interest, not the contract rate. The courts that have addressed the issue are in agreement on this point. *See In re Jones*, 188 B.R. 281, 284 (Bankr.D.Or.1995) (a plan that applies § 1322(c)(2) to a debt must include a discount factor to ensure that creditor receives market value); *In re Young*, 199 B.R. 643, 654 (Bankr.E.D.Tenn.1996) (a creditor whose loan is modified with § 1322(c)(2) must receive the present value of the claim); *accord Witt v. United Companies Lending Corp. (In re Witt)*, 113 F.3d 508, 512 (4th Cir.1997) (a debtor applying § 1322(c)(2) to a loan must pay the full amount of the claim pursuant to § 1325(a)(5)).

Moreover, this reading of the statute comports with the overall scheme of the Code. *See U.S. Nat. Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 455, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402 (1993) (when interpreting a statute, a court must be guided by the provisions of the law as a whole, its object and policy). The general application of § 1325(a)(5) furthers bankruptcy's goal of treating all similarly situated creditors equally. By supplanting a

creditor's contract rate of interest with the market rate, the Code prevents a secured creditor from absorbing the debtor's postpetition earnings which should more properly be distributed equally amongst the debtor's claimants. The preference afforded home mortgagees is an exception to this rule, but one that Congress felt was necessary to encourage the flow of money into the housing market at low interest rates. *See Nobelman*, 508 U.S. at 332, 113 S.Ct. at 2112 (Stevens, J. concurring). The loans described in § 1322(c)(2), however, are of an entirely different nature. These short-term, high-interest rate home equity loans are more akin to consumer financing than to traditional home lending. *See* 5 Collier On Bankruptcy ¶ 1322.16 (15th Ed.1996) (short-term and balloon payment mortgages often have high rates or terms that are particularly unfavorable which Congress has deemed deserving of close scrutiny).[5] To read the statute as Beneficial suggests would extend to consumer financing the special protection afforded to home lenders. In comparison, the Debtor's interpretation has the benefit of logical consistency with the statutory scheme by treating similar claims similarly.

Accordingly, the court holds that § 1322(c)(2) allows a debtor to modify a home equity loan by use of § 1325(a)(5) in a situation where the final payment on the loan would fall due before the end of the debtor's plan term. As discussed above, § 1325(a)(5) requires a "market rate" of interest on the payment of the claim.

## 2. SECTION 1322(e)

There is one final aspect to this case. The parties entered into the five-year loan agreement on December 14, 1994. Consequently, treatment of the loan is governed by § 1322(e) as well as § 1322(c)(2). *See* footnote 3. Section 1322(e), however, in its introductory clause uses the phrase "notwithstanding ... § 1325(a)(5)", an expression used to disenable the noted section. At first glance, then, there is an apparent conflict between § 1322(c)(2) and § 1322(e): the former sanctions a debtor's use of § 1325(a)(5)

---

**5.** Of course, traditional long term loans with fewer than five years remaining before the final

payment would also be subject to § 1322(c)(2), but only with minor effect.

to modify a short-term home equity loan, while the latter expressly prohibits its use.

 Upon closer inspection, the sections are easily reconciled. Section 1322(e) only applies to the arrearage. It states that "if it is proposed in a plan to cure a default, the amount necessary to cure *the default* shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." (Emphasis added). In other words, in a situation where both § 1322(c)(2) and § 1322(e) apply to a loan, the loan is bifurcated into two components—the arrearage and the unmatured principal payment. The unmatured principal payment is subject to § 1325(a)(5) which mandates a market rate of interest, whereas the cure of the default amount must provide interest on the claim in accordance with the contract. *See In re Harko*, 211 B.R. 116, 122 (2nd Cir. BAP 1997) (a cure under § 1322(e) is conceptually distinct from cram down and is not inconsistent with prospective modification under the plan using § 1325(a)(5)).

 Turning to the contract in this case, it enumerates a "Rate of Charge" (an interest rate), of 21.0%. However, the "Rate of Charge" only applies to the "unpaid balance of the Amount Financed," which is the unpaid principal. While the contract provides for a "Late Charge" of 6% on the "Monthly Installment", there is no provision in the contract for interest on interest. Accordingly, the contract rate of interest (21%) must only be paid on the portion of the arrearage which constitutes unpaid principal. To the extent the arrearage also includes accumulated interest, no interest on that interest is required.

## CONCLUSION

As presently drafted, the Debtor's chapter 13 plan cannot be confirmed. However, the denial of plan confirmation is without prejudice. Hearings to determine the appropriate "market rate" of interest will be scheduled, after which, the Debtor shall be afforded an opportunity to amend his chapter 13 plan in a manner consistent with the foregoing discussion. This memorandum shall constitute the

court's findings of fact and conclusions of law. An appropriate order shall issue.