In re Roberta B. WINOGORA, Debtor.

Bankruptcy No. 96–37880.

United States Bankruptcy Court,
D. New Jersey.

June 25, 1997.

Dean Sutton, Sparta, NJ, for Debtor.

Rhondi Lynn Schwartz, Shapiro & Kreisman, Cherry Hill, NJ, for Fleet Mortgage Group, Inc.

### MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on a motion by the debtor, Roberta B. Winogora, to deter-

mine the extent of a lien, or, alternatively, to compel an accounting. The primary issue addressed in this opinion is whether the Bankruptcy Reform Act of 1994 (hereinafter the "1994 Reform Act" or "Reform Act") effectively overruled the holding in *In re Stendardo,* 991 F.2d 1089 (3d Cir.1993), that the holder of a foreclosure judgment is not entitled to add post-judgment advances for taxes and insurance to its secured claim. The court holds that the Reform Act did not overrule *Stendardo.* The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (K) and (O). The following shall constitute the court's findings of fact and conclusions of law.

## FINDINGS OF FACT

On September 11, 1996 (hereinafter the "petition date") Roberta B. Winogora (hereinafter the "debtor") filed a voluntary petition for relief under chapter 13 of title 11, United States Code (hereinafter the "Bankruptcy Code" or "Code"). On Schedule D of her petition the debtor listed Fleet Mortgage Group, Inc. (hereinafter "Fleet") as the holder of a first mortgage on the debtor's principal residence. On May 8, 1992, nearly four years before the petition date, Fleet had obtained a judgment of foreclosure on the mortgage.

On October 15, 1996 the debtor filed a chapter 13 plan. Under the plan, the debtor proposed, *inter alia,* to cure her prepetition mortgage default to Fidelity and to reinstate the mortgage. On or about January 16, 1997 Fleet filed a proof of claim for prepetition arrears in the amount of $121,977.97. Thereafter, because of three prior chapter 13 bankruptcy filings by the debtor and her husband, Fleet moved to vacate the automatic stay and for prospective relief from the automatic stay in the event of future filings. The court entered an order permitting the case to continue, requiring the debtor to continue postpetition mortgage payments, giving Fleet a 30–day default clause and granting Fleet prospective relief in future bankruptcies if this case is not successful.

On January 23, 1997, for the purposes of determining her ability to refinance and pay the judgment in full through an amended plan, the debtor requested from Fleet a statement of the total payoff amount of the foreclosure judgment. On February 3, 1997 the debtor made a second request for a payoff figure. Fleet did not respond to either request. On March 25, 1997, in anticipation of obtaining the necessary financing, the debtor filed an amended plan. Under the amended plan, the debtor proposes that:

> Fleet Mortgage Corp., secured by a first mortgage which merged into a foreclosure judgment on the debtor's residence ... shall receive the sum of $300,000.00 outside this Plan which is the amount due, within 6 months of the date of confirmation of this Plan. Fleet shall retain its lien securing its claim on the property until payment. The debtor will pay property insurance premiums and property taxes as due. The debtor will also pay $1,650.00 per month to Fleet, beginning the month after confirmation of this Plan. This amount represents adequate protection payments at the judgment rate prescribed by R. 4:42 of the New Jersey Rules. The payment of $300,-000.00 will be accomplished by refinance of the property.

Brief in Support of Debtor's Motion to Determine Extent of Lien, at Ex. B. On the same date, the debtor filed the instant motion seeking to determine the extent of Fleet's lien or an order compelling Fleet to provide an accounting. On April 15, 1997 Fleet filed a certification in response to the debtor's motion, asserting a total payoff figure of $427,757.92, including the judgment amount, all post-judgment advances for taxes, insurance and interest through April 28, 1997. The debtor disputes this figure and asserts that it improperly includes $47,912.76 in post-judgment advances to which Fleet is not entitled.

### The Debtor's Position

The debtor argues that Fleet's secured claim does not include sums advanced for property taxes and insurance after the judgment of foreclosure was entered. The debtor argues that under New Jersey law, upon entry of a foreclosure judgment the mortgage merges into the judgment, there-

by extinguishing the mortgage. The debtor argues that absent any provision in the judgment for payment of post-judgment advances, a debtor has no obligation to reimburse the judgment creditor for such expenses.

The debtor also argues that she is not estopped from asserting the merger doctrine as a bar to Fleet's recovery. The debtor argues that Fleet's advances for post-judgment insurance and taxes were not made in reliance upon any representations made by the debtor. The debtor contends, rather, that Fleet advanced the insurance premiums as part of its normal course of business and for its own benefit.

The debtor also argues that, contrary to Fleet's assertions, her plan does not violate the anti-modification provision of Bankruptcy Code § 1322(b)(2). The debtor contends that the plan proposes to pay off the foreclosure judgment pursuant to Code § 1322(c)(2), not modify it.

Lastly the debtor argues that Fleet has waived its right to assert entitlement to post-judgment advances. The debtor argues that although Fleet contends that it obtained two orders for additional sums, Fleet has failed to provide any evidence of them. The debtor further argues that Fleet failed to mention these orders in its certification of amount due and thus may not assert entitlement to such sums at this late date.

### Fleet's Position

Fleet argues that it is entitled to post-judgment advances in the amount of $47,912.76. Fleet argues that under Code § 1322(c)(1) a debtor has the right to cure and reinstate a mortgage through a chapter 13 plan following entry of a foreclosure judgment. Fleet argues that reinstatement of a mortgage effectively reinstates the terms of the note and mortgage and accordingly obligates the mortgagee to advance funds for taxes and insurance. Fleet further argues that enactment of Bankruptcy Code § 1322(c) overruled prior Third Circuit case law which did not permit cure and reinstatement after judgment of foreclosure. Fleet argues that in overruling these cases, § 1322(c) implicitly overruled the New Jersey cases on merger on which they were premised. Fleet further argues that a mortgagee must advance property taxes and insurance even following judgment of foreclosure in order to protect its lien in the event that a debtor thereafter avails itself of its right to cure and reinstate the mortgage.

Fleet also argues that the debtor is estopped from asserting the merger defense in this proceeding because she induced Fleet to make post-judgment advances for taxes and insurance in reliance on the original plan which proposed to cure and reinstate the mortgage.

Fleet further argues that the debtor's proposed amendment to the plan violates the anti-modification provision of Code § 1322(b)(2) because it proposes to modify the foreclosure judgment which is secured only by an interest in property which is the debtor's principal residence.

Lastly, Fleet argues that it has obtained two orders for additional sums and is therefore entitled to post-judgment advances under N.J. Ct. R. 1:34–6(5) which allows a mortgagee to recoup certain post-judgment advances upon entry of a court order.

### CONCLUSIONS OF LAW

In resolving the parties' dispute over Fleet's entitlement to post-judgment advances, the court must first address two principal issues: (1) whether the debtor's proposal to pay off the foreclosure judgment through the plan violates the anti-modification provision of Bankruptcy Code § 1322(b)(2), and (2) whether the debtor's proposed payoff of the judgment falls within the scope of Bankruptcy Code § 1322(c)(2). The court shall address each issue in turn.

### A. Bankruptcy Code § 1322(b)(2): The Anti–Modification Provision

Under Bankruptcy Code § 1322(b), a chapter 13 debtor may generally structure repayment of its indebtedness through a plan which modifies the rights of both secured and unsecured creditors. *See* 11 U.S.C. § 1322(b); *Johns v. Rousseau Mortgage Corp. (In re Johns)*, 37 F.3d 1021, 1023 (3d Cir.1994). Code § 1322(b)(2) provides an exception to the general rule by expressly for-

bidding modification of rights of creditors whose claims are secured only by a security interest in real property that is the debtor's principal residence. 11 U.S.C. § 1322(b)(2). Specifically, Code § 1322(b)(2) provides in pertinent part:

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> . . .
>
> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . .

*Id.* By its express terms, the anti-modification provision of § 1322(b)(2) applies only where the debtor proposes to alter the right to payment of a creditor whose sole security is a security interest in the debtor's principal residence. *See id.* In the instant case, it is not disputed that the real property in question is the debtor's principal residence. The parties have not argued that any property other than the real property secures Fleet's claim. A foreclosure judgment is a security interest within the meaning of Code § 101(51). *See Johns,* 37 F.3d at 1025; *Midlantic Nat'l Bank v. DeSeno (In re DeSeno),* 17 F.3d 642, 645 (3d Cir.), *reh'g denied* (Mar. 16, 1994); *First Nat'l Fidelity Corp. v. Perry,* 945 F.2d 61, 64–65 (3d Cir.1991), *reh'g denied* (Oct. 8, 1991); *see also In re Pinto,* 191 B.R. 610, 614 (Bankr.D.N.J.1996). Fleet's claim in this case is therefore a "claim secured only by a security interest in real property that is the debtor's principal residence" The debtor proposes to pay Fleet's foreclosure judgment over a period of six months. Therefore, unless some other Code provision authorizes such treatment, the debtor's amended plan violates the anti-modification provision of Code § 1322(b)(2) with respect to Fleet's claim.

### B. Bankruptcy Code § 1322(c)(2)

The debtor submits that Bankruptcy Code § 1322(c)(2) provides an exception to the anti-modification rule of subsection (b)(2) and permits her to pay off the foreclosure judgment through the plan. Code § 1322(c)(2) reads in pertinent part:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
>
> . . .
>
> (2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for payment of the claim as modified pursuant to 1325(a)(5) of this title.

11 U.S.C. § 1322(c)(2) (1994).

As a matter of statutory construction, it is certainly questionable whether the entry of a foreclosure judgment constitutes "the last payment on the original payment schedule ... that is ... due before the date on which the final payment under the plan is due." It is clear, however, from the legislative history of the 1994 Reform Act that Congress intended in enacting § 1322(c)(2) to overrule *First National Fidelity Corp. v. Perry,* 945 F.2d 61 (3d Cir.1991), which held that a foreclosure judgment could not be paid through a chapter 13 plan. H.R.Rep. No. 103–834, at 33–34 (1994) *reprinted in* 1994 U.S.C.C.A.N. 3336; 140 Cong. Rec. HI 0769 (Oct. 4, 1994). For this reason and the others given in *In re Nepil,* 206 B.R. 72 (Bankr. D.N.J.1997), the court holds that Code § 1322(c)(2) authorizes the payment of a foreclosure judgment through a chapter 13 plan.

### C. The Merger Doctrine and *Stendardo*

Because it is permissible for the debtor to pay the foreclosure judgment through her chapter 13 plan, the court must determine whether Fleet is entitled to add post-judgment advances for property taxes and insurance to its secured claim. *In re Stendardo* held that such advances cannot be added to the secured claim unless the mortgage clearly evidences an intention that a provision for such advances shall survive entry of a foreclosure judgment. *Stendardo,* 991 F.2d at 1095–97. Fleet does not argue that such an exception applies here. Fleet argues instead that *Stendardo* was overruled by the 1994 Reform Act. Fleet reasons that *Stendardo* was based on *In re Roach,* 824 F.2d 1370 (3d

**636**

Cir.1987) and *Perry,* and that because they were overruled *Stendardo* must have been overruled as well. Fleet further argues that the debtor is estopped from asserting *Stendardo* as a bar to Fleet's recovery because the debtor failed to raise the defense in any former chapter 13 proceeding and induced Fleet to make the advances in the instant case by proposing in her initial plan to cure and reinstate the mortgage.

### 1. Estoppel

■ At the outset, the court rejects Fleet's estoppel argument. Third Circuit case law recognizes more than one type of estoppel. *See McCarron v. FDIC,* 111 F.3d 1089, 1097 (3d Cir.1997) (discussing and identifying the elements of equitable and judicial estoppel); *Phillips v. Borough of Keyport,* 107 F.3d 164, 182 (3d Cir.1997) (equitable estoppel); *McNemar v. The Disney Store, Inc.,* 91 F.3d 610, 616–17 (3d Cir.1996) (judicial estoppel). Fleet, however, has failed to specify which estoppel doctrine it seeks to invoke. Further, Fleet has not cited any authority for its position nor has it attempted to apply the facts of the instant case to the elements of any estoppel claim. The court therefore finds that Fleet has not met its burden of proving that the debtor is estopped from asserting *Stendardo* as a bar to Fleet's recovery.

### 2. *Stendardo*

■ Section 1322(c)(1) authorizes post-judgment cure of mortgage defaults and reinstatement of a mortgage. If a mortgage is reinstated under § 1322(c)(1), all provisions of such mortgage including authorization for advances for taxes and insurance are also reinstated.

■ By contrast, § 1322(c)(2) does not refer to curing defaults. It provides instead for payment of the mortgage or judgment over the duration of the plan. Section 1322(c)(1) overruled *Roach* to the extent *Roach* held that a mortgage cannot be reinstated after judgment under a chapter 13

plan, and section 1322(c)(2) overruled *Perry's* holding that a judgment cannot be paid through a chapter 13 plan. Neither subsection of § 1322(c), however, reflects any intention to modify so much of *Roach* as held that under New Jersey law a mortgage merges into a foreclosure judgment. If § 1322(c)(1) is not being used to reinstate a mortgage, it follows that any other consequences of the merger of a mortgage into a judgment under New Jersey law still apply. One of those consequences is the binding effect of *Stendardo's* holding that a mortgagee cannot add post-judgment advances for taxes and insurance to its secured claim.[1]

Fleet has not met its burden of proving the facts necessary to prevail on its other arguments which are therefore rejected.

For these reasons, the court holds that Fleet's post-judgment advances for taxes and insurance are not part of its secured claim.

### CONCLUSION

For the foregoing reasons, the court holds that the debtor's plan is authorized under Code § 1322(c)(2), and that Fleet's post-judgment advances for taxes and insurance are not part of its secured claim.

It does not necessarily follow, however, that the plan is confirmable. Code § 1325(a)(6) provides as a requirement for confirmation that the debtor will be able to make all the payments under the plan. In this case, that requires a finding that the debtor will be able to sell the property within a time and at a price which will comply with the plan. Because this is the debtors' fourth chapter 13 case in three years, and because the debtors' plan in their first case filed on May 11, 1994 proposed the same sale and payoff which is proposed here, the debtors will be held strictly to their burden of proving that the plan is feasible.

The attorney for the debtor is to submit an order and arrange for a phone conference with the court and the attorneys for Fleet

---

1. Although *Stendardo* was based on Pennsylvania law, it cited Roach for the proposition that under the law of both states a mortgage merges into a foreclosure judgment. *Stendardo,* 991 F.2d at 1095. Because the merger doctrine was the basis for *Stendardo's* holding that mortgage provisions for taxes and insurance no longer exist after judgment, *Stendardo* is binding in chapter 13 cases involving New Jersey real property as well.

and for the trustee within seven days to schedule a further hearing on confirmation.