**In re Allan Richard ROWE and Judith P. Gold–Rowe, Debtor.**

**Bankruptcy No. 98–28641(WFT).**

United States Bankruptcy Court, D. New Jersey.

Feb. 22, 1999.

Richard P. Shapiro, Middlebrooks & Shapiro, P.C., Parsippany, New Jersey, for the debtors.

John D. Birchby, Dieffenbach, Witt & Birchby, Paramus, New Jersey, for Hudson City Savings Bank.

## OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

This matter comes before the Court via a Motion for Relief From the Automatic Stay pursuant to section 362(d) of the Bankruptcy Code and Objection to Confirmation of Debtors' Chapter 13 Plan ("the Plan") pursuant to Bankruptcy Code section 1325(a) by Hudson City Savings Bank, ("Hudson" or "the Bank"). Allan Richard Rowe and Judith P. Gold–Rowe, (Collectively "the Debtors" or "the Rowes"), oppose Hudson's Motion, and seek confirmation of the Plan which undertakes, pursuant to Bankruptcy Code section 1322(c)(2) to pay a prepetition fore-

closure judgment on a long term mortgage whose maturity date, by its own terms extends beyond the life of the debtors' Chapter 13 Plan.

Issues concerning stay relief and confirmation of a Debtor's Chapter 13 Plan are core matters as defined by the United States Congress in 28 U.S.C. § 157(b)(2)(G) and (L). The within Opinion constitutes this Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTS

The facts in this case are not in dispute. On March 29th 1990, the Rowes obtained financing to purchase their home located at 1 Sweetwater Lane, Ringwood, New Jersey ("the Property") in the amount of $179,300 from Hudson. To secure Hudson's loan the Rowes gave Hudson a mortgage, ("the Mortgage"), on the Property. (Certification of V. Barry Corridon, filed September 3, 1998, Exhibit A). The Mortgage was recorded on April 10, 1990 in the mortgage book at Passaic County. Significantly for purposes of the within Opinion, by its own terms, the Mortgage matures on April 1, 2020. On June 1, 1995, the Rowes failed to make the monthly payments required under the Note. (Corridon Certification, Exhibit A). On November 6, 1995, Hudson filed a foreclosure complaint in Passaic County, New Jersey.

During Hudson's attempt to foreclose on the Property several bankruptcies were filed by the Rowes. The procedural history of these multiple filings reveal that initially, the Rowes filed a voluntary petition under Chapter 7 of the Bankruptcy Code on March 26, 1996 (case no. 96–22425). On July 5, 1996, an Order was then entered granting the debtors their Chapter 7 discharge. On July 8, 1996, the Trustee, filed a Certification of No Objection to Abandonment of the Property securing Hudson's Mortgage.[1] The case was

---

1. It appears that the debtors have little or no equity in the Property in that fair market value of the Property is listed as $240,000. Hudson's secured claim on the first mortgage

then closed on July 25, 1996. (Bank's Brief in Support of Stay Relief, filed September 3, 1998).

Approximately four months after receiving their Chapter 7 discharge, on November 18, 1996, the debtors filed a second petition, this time seeking relief under Chapter 13 of the Bankruptcy Code (case no. 96–40523). Thereafter, On December 1, 1997, Hudson was granted stay relief with respect to the debtors' Property insofar as the debtors were four months delinquent in making payments to Hudson outside of the Chapter 13 Plan. (Corridon Certification, Exhibit B—Order entered December 1, 1997 vacating stay). On December 9, 1997, confirmation of the debtors' Chapter 13 Plan was denied and the Petition was dismissed for failure to make payments to the Trustee. (Corridon Certification, Exhibit C). On March 31, 1998, Hudson then obtained a Final Judgment of Foreclosure ("the Judgment") and a Writ of Execution. (Corridon Certification, Exhibit D). A Sheriff's Sale was scheduled for July 7, 1998, but was stayed due to the debtors' filing of the third and current petition for relief, again under Chapter 13 of the Bankruptcy Code on July 2, 1998.

The Rowes seek to treat Hudson's Foreclosure Judgment, under their Chapter 13 plan. The Rowes wish to pay the Bank monthly installments over a fifty nine month period with the balance paid by refinancing the Mortgage on the sixtieth month. (Chapter 13 Plan, filed August 17, 1998). In essence, the Rowes are proposing to pay the Bank within the Plan over a period of fifty nine months with a balloon payment at the sixtieth month. The proof of claim filed by Hudson on July 20, 1998, indicates that as of the petition date, $219,-937.44, with a per diem interest of $39.66, was required in order to satisfy the loan in full and, that the amount due for reinstatement of the Mortgage was $70,177.20.

is $219,937.44. The debtors further list a second mortgage on the Property to Fleet

(See also, Corridon Certification, Exhibit E).

The Bank seeks to vacate the automatic stay with respect to the debtors' Property and objects to the confirmation of the Debtor's plan. In essence, the Bank's objection to confirmation is twofold. First, the Bank contests the debtors' attempt to pay the amount of the Foreclosure Judgment through the Plan pursuant to Bankruptcy Code section 1332(c)(2), since the *maturity date* on the within Mortgage occurs *after* final payment under the Plan becomes due. The Bank asserts that the Rowes "only option" pursuant to 11 U.S.C. sections 1322(c)(1) and (b)(5) is to cure the arrears owed on the Mortgage within the Plan, while making regular mortgage payments of principal, interest and taxes outside of the Plan. (Supplemental Brief in Response to Debtors' Memorandum in Opposition to Stay Relief, filed December 1, 1998). Second, the Bank asserts *inter alia*, that the debtors' Plan cannot meet the feasibility requirements of 11 U.S.C. section 1325(a).

For the reasons discussed below, this Court finds in favor of Hudson, that confirmation of the Debtor's Chapter 13 Plan as proposed must be denied, and further that the Plan is not feasible.

### DISCUSSION

Section 1322(b)(2) provides that a plan may "modify the rights of holders of secured claims ... or of holders of unsecured claims...." However, § 1322(b)(2) carves out an exception for creditors whose mortgages are secured by the debtor's principal residence only. In that case, § 1322(b)(2) prohibits any modification of the original terms agreed upon between the creditor and the debtor. Section 1322(c)(2), which was added to the Code as part of the 1994 Amendments, provides that in some instances, which shall be discussed below, even a mortgage that is only

Bank in the amount of $31,750.00.

secured by the debtor's principal place of residence can be modified and paid through the debtor's Chapter 13 plan.

Hudson's Mortgage is secured by the Debtor's principal residence. The Mortgage is a long term mortgage that extends, by its terms, beyond the life of the debtors' Plan. The issue before this Court is whether or not a long term mortgage exceeding the life of a Debtor's plan that has been reduced to a *foreclosure judgment* is within the meaning of § 1322(c)(2). Should the Court find that the Judgment, in the present case, *is not* within the confines § 1322(c)(2), since the residence has not yet been sold at foreclosure sale, the Debtors may nevertheless choose to reinstate the mortgage, make regular monthly payments outside of the Plan, and pay the arrearage under the Plan as provided for under sections 1322(c)(1) and (b)(5), *provided that* said Plan meets the feasibility requirements of 11 U.S.C. section 1325(a).

### The Rowes' Argument

The Rowes argue that pursuant to 11 U.S.C. § 1322(c)(2), a debtor is allowed to modify a mortgage that has been reduced to a foreclosure judgment, even though the mortgage by its own terms exceeds the life of the plan. The Debtors' maintain that once a mortgage has been reduced to a judgment, the Court should no longer look to the terms of the mortgage. Rather, the Rowes contend, the Court should look to the fact that the judgment is a matured claim that is owed before the final payment under the plan and as such should be within the scope of § 1322(c)(2). In support of their position, the Debtors rely on Judge Winfield's opinion *In re Nepil,* 206 B.R. 72 (Bankr.D.N.J.1997).

### Hudson's Argument

For its part, the Bank argues that the Court should look to the underlying obligation to determine whether or not a foreclosure judgment is within § 1322(c)(2). If the underlying obligation exceeds the life of the plan then, the Bank contends, the foreclosure judgment is not within § 1322(c)(2) and thus the Debtors' only

remedy is to reinstate the mortgage and pay the arrears under the Plan, while providing for regular monthly payments outside of the Plan pursuant to sections 1322(c)(1) and (b)(5). The Bank argues that the Debtors current plan violates § 1322(b)(2) since it proposes to *modify* the terms of the original note by changing the date the mortgage matures and the agreed upon rate of interest, and that, if any, the debtors' only remedy with respect to said Mortgage is to attempt to *cure* same pursuant to subsection (c)(1). In support of its position, the Bank relies *inter alia,* on the cases of *In re Mattson,* 210 B.R. 157 (Bankr.D.Minn.1997); *In re Bagne,* 219 B.R. 272 (Bankr.E.D.Cal.1998); *In re Eubanks,* 219 B.R. 468 (6th Cir. BAP 1998); and *In re Witt,* 113 F.3d 508 (4th Cir.1997).

### Analysis

Bankruptcy Code § 1322(c)(2) provides, in part:

> Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

> (2) in a case in which the last payment on the *original payment schedule* for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title. (Emphasis added)

As applied to the facts herein, this Court must examine whether the words "last payment on the original payment schedule", as set forth above, refer to the original note or the Foreclosure Judgment as argued by the debtors.

In undertaking the above analysis, the Court first looks to the plain meaning of the statute. "The starting point in every case involving construction of a statute is the language itself" *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (Powell, J., concurring), "and while

the circumstances of the statute's enactment may persuade us that 'Congress did not intend words of common meaning to have their literal effect,' the 'plain meaning' of the language is 'the primary, and ordinarily the most reliable, source of interpreting the meaning' of a statute." *In re Seidel*, 752 F.2d 1382, 1384 (9th Cir. 1985) (quoting in part *Watt v. Alaska*, 451 U.S. 259, 266, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981)). Therefore, "where the statute's language is plain, the inquiry should end, as the role of the courts is to enforce a statutory provision according to its terms." *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (citations omitted). Accordingly, "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters.'" *United States v. Ron Pair Enters., Inc., Id.* at 242, 109 S.Ct. 1026 (alteration in original) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)).

To date, few courts have considered the issue *subjudice*, as to whether or not a long term mortgage that has been reduced to a foreclosure judgment falls within the meaning of § 1322(c)(2). *See In re Nepil*, 206 B.R. 72; *In re Winogora*, 209 B.R. 632 (Bankr.D.N.J.1997); and *In re Sims*, 185 B.R. 853 (Bankr.N.D.Ala.1995). In *Nepil*, Judge Winfield held that the debtors were entitled to pay off a prepetition foreclosure judgment over the life of their plan, regardless of the length of the underlying mortgage. *See Id.* at 76. In interpreting the words "original payment schedule" the Court pointed out that the term is not defined in the Bankruptcy Code. The Court explained that the term can be construed in two possible ways. "Original payment schedule" could either refer to the "amortization schedule under which the note is satisfied" or it can be defined

more broadly "to reach the entirety of the mortgagee's right to payment, including the fully accelerated payment reflected in the foreclosure judgment." *Id.* at 74. The Court in *Nepil* concluded that the plain meaning of the statute is not clear and that it must look elsewhere.

In reaching its conclusion that a foreclosure judgment on a mortgage whose maturity date by its own terms falls *after* final payment under the Chapter 13 plan is due, is within the meaning of § 1322(c)(2), the *Nepil* Court relied on the "the design of the statute as a whole and its object and policy" *Id.* at 74, as well as on the reasoning of the Bankruptcy Courts in both *In re Jones*, 188 B.R. 281 (Bankr.D.Ore.1995), and *In re Chang*, 185 B.R. 50 (Bankr. N.D.Ill.1995). The Court explained that the design of the statute was to provide a Chapter 13 debtor greater opportunity to use Chapter 13 to fashion flexible payment plans and to enable the debtor to save his home. *See Id.* at 75. In *Chang*, 185 B.R. at 51, the debtor sought to modify a mortgage that matured prepetition using his Chapter 13 plan. The Court, in that case, held that the debtor could pay the outstanding mortgage loan balance over the life of the plan. *See Id.* at 53. Similarly, in *Jones*, 188 B.R. at 281, the mortgage matured according to its terms prior to the debtor's bankruptcy. The debtor failed to pay the final balloon payment and sought to modify the mortgage by providing for it in his Chapter 13 plan. Finding that the policy of aiding debtors in their efforts to retain their homes pervades the amended section, the *Jones* court found that § 1322(c)(2) includes prepetition mortgage obligations. *Id.* at 284. Applying the reasoning of both *In re Chang* and *In re Jones*,[2] Judge Winfield concluded that:

> As a practical matter this Court can discern no difference among a fully matured mortgage debt, a mortgage on which the balloon payment is due, and a

---

2. This Court finds both *In re Chang* and *In re Jones,* as relied upon by the *Nepil* court distinguishable. In both of those cases, the original

payment schedule of the mortgage matured before the date on which the final payment under the plan was due.

foreclosure judgment. In each circumstance the holder of the obligation is entitled to immediate full payment. Given the overall objectives of Chapter 13, the fact that the 1994 Amendments express a particular concern that debtors be afforded opportunity to save their homes, and that no practical difference exists between the rights of holders of matured mortgage obligations and holders of foreclosure judgments, the Court construes the language of § 1322(c)(2) to include foreclosure judgments. *Id.* at 76.

Similarly, following *Nepil,* Judge Stripp in *In Re Winogora,* 209 B.R. 632 (Bankr. D.N.J.1997) also held that section 1322(c)(2) authorizes the payment of a foreclosure judgment through a Chapter 13 Plan.[3]

This Court respectfully disagrees with the holdings of both *Nepil* and *Winogora* and finds that the "last payment" language of section 1322(c)(2) refers to the date of the last payment on the original note rather than the date the accelerated debt is due and therefore declines to extend the scope of subsection (c)(2) to include entry of a foreclosure judgment on a mortgage whose final payment is due after the final payment under a debtor's Chapter 13 Plan. Since the maturation date on the within Mortgage occurs after the contemplated final payment under the proposed Plan, this Court finds sections 1332(c)(1) and (b)(5) controlling as to the facts *subjudice,* for the following reasons.

First, unlike either the *Nepil* and/or *Winogra* Courts, this Court finds the meaning of the statute with respect to the words "original payment schedule" unambiguous in that they refer to the last pay-

ment to be made under the terms of the original note and do not contemplate entry of a foreclosure judgment. In this regard, if Congress had intended to include foreclosure judgments in section 1322(c)(2), it did not need to insert the words "original payment schedule."

In *In re Sims,* 185 B.R. 853 (Bankr. N.D.Ala.1995), the bankruptcy court specifically considered this question of whether or not section 1322(c)(2) was applicable where, as here, there had been a prepetition default by the debtors, and acceleration of the debt resulting in foreclosure of a mortgage whose final payment under the original payment schedule was due after the final payment under the debtor's Chapter 13 plan. In holding that section 1322(c)(2) did *not* apply, the *Sims* Court reasoned:

> Subsection (c)(2) is not applicable to the case at bar. Under subsection (c)(2), certain mortgages can be modified and provided for in Section 1325(a)(5). As a Chapter 13 plan may not extend beyond five years, this subsection applies only to those cases involving "short term mortgages, long-term mortgages on which the debtor has nearly completed payment, and mortgages with balloon payments." *In re Escue,* 184 B.R. 287, 293 (Bankr.M.D.Tenn.1995). See also *In re Eason,* 181 B.R. 127, 132–134 (Bankr. N.D.Ala.1995) (a pre-Reform Act case). *Subsection (c)(2) applies by its own language only to mortgages in which the last payment is due before the date of final payment of the plan and at least one court has found that it is also "intended for debtors to be able to cure 'stub' or 'short term' mortgages which mature or balloon prior to filing of the petition." Escue,* 184 B.R. at 292. *It*

---

**3.** In *Winogora,* 209 B.R. at 635, the Court acknowledged that "As a matter of statutory construction it is certainly questionable whether the entry of a foreclosure judgment constitutes 'the last payment on the original payment schedule ... that is ... due before the date on which the final payment under the plan is due.'" The Court further found however that from the legislative history of the 1994 Reform Act, Congress intended in enacting section 1322(c)(2) to overrule *First National Fidelity Corp. v. Perry,* 945 F.2d 61 (3d Cir.1991) which held that a foreclosure judgment could not be paid through a Chapter 13 plan. (Citing H.R.Rep. No. 103–834, at 33–34 (1994) reprinted in 19994 U.S.C.C.A.N. 3336; 140 cong. Rec. HI 0769 (Oct. 4, 1997)).

*does not apply to a case such as this where there has been a pre-petition default, acceleration, foreclosure sale, and recordation of the foreclosure deed.* (Citations omitted). *In the case at bar, the last payment of the mortgage was not due before the final payment of the plan and the mortgage did not mature or balloon prior to the filing of the petition. Section 1322(c)(2), therefore, is not applicable.*

185 B.R. at 856 (emphasis added). See also, *In re Thorsted,* 157 B.R. 5, 9 (Bankr. E.D.Va.1993) (pre-Reform act case holding that the "last payment" language under former 11 U.S.C. section 1322(b)(5) refers to when the last payment would have been due under the original note had it not been accelerated).

▮ In holding as it does, this Court finds the words "original payment schedule" include only mortgages that mature prior to the last payment under the plan. Thus only short term mortgages, mortgages with balloon payments maturing before the date on which the last payment under the plan is due and long term mortgages maturing prior to the date on which the last payment under the plan is due are within the scope of § 1322(c)(2). Congress intended to protect debtors from short term mortgages because they subject the debtor to greater risks. *See In re Mattson,* 210 B.R. at 161. Moreover, long term mortgages that mature prior to the date the final payment under the plan is due are protected within § 1322(c)(2) because, in all probability, after the debtor has made most of the payments under the note, the debtor has acquired a substantial equity in his home which Congress sought to protect. *Id.*

The Court also finds support in the following comments by Professor Collier, who states:

The legislative history of the provision states that it was intended to overrule the decision of the court of appeals for the Third Circuit in *First National Fidelity Corp. v. Perry,* 945 F.2d 61 (3d Cir.1991), which held that a debtor could not utilize section 1325(a)(5) to provide for a home mortgage protected from modification by section 1322(b)(2). Section 1322(c)(2) thus expressly provides that *certain mortgages* may be modified and provided for under section 1325(a)(5). Specifically, this may occur if the last payment on the original payment schedule for the mortgage is due before the final payment under the plan is due.

Because the plan may not extend beyond five years, this section will encompass short term mortgages, long term mortgages on which the debtor has nearly completed payments, and mortgages with balloon payments. Congress obviously believed that debtors with such mortgages needed additional protection. Short-term mortgages and balloon payment mortgages often have high rates or terms that are particularly unfavorable, which Congress has deemed deserving of close scrutiny. And debtors nearing the end of a long-term mortgage often have large amounts of equity that could be lost in a foreclosure.

*Collier on Bankruptcy* ¶ 1322.16 (L. King 15th ed. 1987 Revised).[4]

In more narrowly construing the language of the statute than either the Courts in *Nepil* and *Winogora,* the Court notes

---

**4.** Other courts have also interpreted this statute by its plain meaning to include only mortgages that mature prior to date on which the final payment under the plan is due. *See In re Mattson,* 210 B.R. at 161 (discussing whether or not a long term mortgage could be crammed down under § 1322(c)(2), the court noted that it will be rare that those type of mortgages will be undersecured when the last payment under the mortgage is due prior to the date on which the final payment under the plan is due); *In re Bagne,* 219 B.R. 272, 277 (Bankr.E.D.Cal.1998) ("The loans described in § 1322(c)(2), however, are of an entirely different nature. These short-term, high-interest rate home equity loans are more akin to consumer financing than to traditional home lending." *Id.* at 277. The court interpreted the words original payment schedule to mean original mortgage).

that, as a practical matter, in those cases, as in the matter *subjudice*, the pre-petition arrears were substantial. In addition, all three cases involve multiple bankruptcy filings by the respective debtors. It is undisputed that the fundamental rationale underlying section 1322(c)(1) is to reject the New Jersey Merger Doctrine as previously set forth in *In re Roach*, 824 F.2d 1370, 1372 (3rd Cir.1987) [5] and *Perry* and to allow the debtor to reinstate the mortgage even after the foreclosure judgment has been entered. See *In re Jones*, 188 B.R. 281, 283 (Bankr.D.Or.1995) (stating that under section 1322(c)(1), as a matter of federal law, debtors now have the right to cure defaults on loans secured by their primary residence after entry of a foreclosure judgment and before foreclosure sale). The Chapter 13 Plan is then used to pay the pre bankruptcy arrears with the debtor in addition having to make the current post bankruptcy normal mortgage payments.

In *Nepil* and *Winogora* the Courts speak in terms of paying the "judgment" over the life of the plan. This Court respectfully declines to follow such reasoning. The statute, at subsection (c)(1)[6], refers to sections 1322(b)(3) or (5)[7] which themselves in turn refer to "curing or waiving of any default." This Court finds that whether under subsection 1322(c)(1) or 1322(c)(2), the proper reference to either "curing" or "modifying" respectively, speaks to the *underlying mortgage* and does not refer to the foreclosure judgment. *See, e.g., In re Tavella*, 191 B.R. 637, 641 (Bankr.E.D.Pa.1996) (citing *Appeal of Capps*, 836 F.2d 773, 777 (3d Cir.1987) (stating "cure by its very nature assumes a regime where debtors reinstate defaulted debt contracts in accordance with the conditions of their contracts.")).

While at first blush, the granting of relief to the debtors under section 1322(c)(2), may appear enticing and equitable, said theory upon closer review must fail. The Mortgage *sub judice*, has been in default and foreclosure since November 6, 1995. Since said date, the debtors up until the time of the filing of their current bankruptcy petition had failed to make $70,177.20 in payments on their original loan of $179,300 to the Mortgagee. The current pay off figure on this debt has, through the debtors' failure to make payments, increased the total Mortgage balance as of the filing of the bankruptcy to the sum of $219,937.44.

The normal monthly Mortgage and escrow payment of the debtors under the original note is $1,911.70. The debtors' Chapter 13 Plan, before the Court, provides for monthly payments of $2,338.66 for 59 months and the balance of the Mortgage to be paid in one lump sum in the 60th month of the five year plan. Debtors' Plan states that each month out of its Plan payment of $2,338.66, the sum of $1,500

---

**5.** In *Roach*, the Third Circuit held that pursuant to the Merger Doctrine, under New Jersey law, a mortgage merged into the foreclosure judgment so that no mortgage contract existed which could be decelerated in Chapter 13. *Nepil*, 206 B.R. at 75 (citing *Roach*, 824 F.2d at 1377–78). Therefore, under *Roach*, a debtor's right to cure was extinguished upon entry of the final judgment in foreclosure. In *Perry*, the Third Circuit held that a foreclosure judgment could not be paid through a Chapter 13 Plan. *Id.* at 75 (citing *Perry*, 945 F.2d 61). Thus, a debtor's attempt to pay off such final judgment in foreclosure through the Chapter 13 plan constituted an impermissible modification.

**6.** 11 U.S.C. section 1334(c)(1) provides:

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law.

**7.** 11 U.S.C. section 1322(b)(5) states:

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any secured claim or unsecured claim on which the last payment is due after the date on which the final payment under the plan is due.

will be sent to the Bank on its Mortgage obligation. Thus, debtors' having accrued $70,177.20 in defaulted payments which have accumulated since 1995, would now ask this Court to allow them for 59 months to pay the secured creditor *less than* the original monthly note payment.

■ With respect to the above, this Court finds that, where as here, a multiple filing debtor has allowed the pre-petition default to increase to the point that the cure of said default is so large that the debtor cannot, under subsection 1322(c)(1), make the required default cure payments through the plan, and make the normal mortgage payments either inside of or outside of the plan, the case, pursuant to said subsection, is unconfirmable. As in *Nepil* and *Winogora*, the debtors herein, ostensibly attempt to address this problem by modifying the terms of the original note on a Mortgage whose natural maturity date extends beyond the life of the Plan, through the auspices of subsection (c)(2) simply by virtue of the fact that a Foreclosure Judgment has been entered. This attempt, this Court finds, must fail insofar as the antimodification provision, subsection 1322(b)(2), specifically precludes the Court from modifying the first mortgage on the residence unless express provisions of the Code allow same. As respects the Mortgage *sub judice*, whose natural maturity date extends beyond the life of the debtors' Chapter 13 Plan, modification pursuant to section 1322(c)(2) does not apply.[8]

### *Feasibility of the Plan*

■ Having found that the Rowes may not attempt to pay the within Foreclosure Judgment through the Chapter 13 Plan pursuant to section 1322(c)(2), the Court must determine whether, were the debtors to exercise their rights to cure pursuant to subsections 1332(c)(1) and (b)(5), the Plan is feasible within the meaning of section 1325(a), which requires *inter alia*, pursuant to subparagraph (a)(6) in particular, that the Debtors demonstrate that they are "able to make all payments under the plan and to comply with the plan."

As above referenced, Hudson's proof of claim indicates that it is owed $219,937.44 as of July 20, 1998 and that the amount due for reinstatement of the Mortgage following filing of the petition is $70,177.20. The debtors' current regular monthly mortgage payment is $1911.70. Moreover, debtors' Amendment to Schedules "I" and "J" of the Chapter 13 Petition, filed November 13, 1998, indicate a "Total Projected Monthly Income" of $5,144.00. Projected monthly expenses, *exclusive of mortgage payment,* are calculated to be $2,823.00. Adding the regular monthly mortgage payment of $1,911.70 to the projected monthly expenses of $2,823.00, the Court arrives at a figure of total projected monthly expenses, inclusive of mortgage payment of $4,734.70, leaving a surplus of only $409.30 from which to fund the debtors' Plan. Taking the reinstatement figure of $70,177.20 and dividing it by the sixty months contemplated by the Plan, the default payments to be paid through the Plan approximate $1,168.62 per month (exclusive of commissions to the Standing Chapter 13 Trustee), or a shortfall of $759.32 per month. Obviously, the debtors' fail to satisfy the section 1325(a)(6) requirement of feasibility.

---

8. Parenthetically, the Court notes that if this Court were to include foreclosure judgments on long term mortgages maturing after final payment under the Plan under § 1322(c)(2), an anomalous result would occur. A debtor that owed money under a long term mortgage and filed for bankruptcy prior to his mortgage being reduced to a foreclosure judgment would not be able to modify the terms of the original note. Conversely, if the debtor waited until the mortgagee obtained a foreclosure judgment however, the debtor would be able to modify the terms of the original note. See *In re Seidel,* 752 F.2d 1382, 1387 (9th Cir. 1985) (finding "Home mortgagee would be deterred from reducing its security interest to a judicial lien since to do so would be to open itself up to a wholesale modification of its right under subsection (b)(2)").

■ In sum, having thoroughly examined the record in this matter including the amount needed for reinstatement of the Mortgage pursuant to subsection (c)(1), the required regular monthly Mortgage payments to be made *outside* of the Chapter 13 plan, as well as, the debtors' total projected monthly income and expenses, this Court finds, as specified above, that the Plan, even when viewed in its best light, fails to meet the feasibility requirements of 11 U.S.C. section 1325(a)(6) and is therefore unconfirmable. The Court having so found, will issue an order denying confirmation and vacating the automatic stay as to the Property. In view of the two prior filings by the debtors, this Court grants prospective relief to the Mortgagee Hudson and rules that any future bankruptcy filing by the debtors will not reimpose the section 362 stay as respects the within Property.

## CONCLUSION

This Court finds that the within Foreclosure Judgment whose underlying Mortgage extends beyond the life of the debtors' Chapter 13 Plan is not within the scope of § 1322(c)(2). Having so found, the Rowes Plan cannot be confirmed. Moreover, reviewing the debtors' ability to reinstate the mortgage and provide for the curing of arrearages through the Plan pursuant to 11 U.S.C sections 1322(c)(1) and (b)(5), for the reasons above referenced, the Court finds that the debtors have failed to satisfy the 1325(a)(6) feasibility requirement insofar as the debtors will not be able to make all payments under the Plan. Confirmation of the debtors' Chapter 13 Plan be and the same is hereby denied. The Bank's Motion for Relief from the Automatic Stay with respect to the Property be and the same is hereby granted with prospective relief.