**In re Elmer Daniel DURAN, Debtor.**

**No. 01–21384.**

United States Bankruptcy Court, D. Wyoming.

Dec. 4, 2001.

Georg Jensen, Cheyenne, WY, for debtor.

Mark R. Stewart, Cheyenne, WY, trustee.

### ORDER ON MOTION FOR RELIEF FROM STAY

PETER J. McNIFF, Bankruptcy Judge.

This case came before the court for a hearing on the motion for relief from the automatic stay filed by EMC Mortgage Corporation (EMC). The court has considered the generally undisputed facts and the applicable law and is prepared to rule.

EMC holds a purchase money mortgage secured by real property which is the debtor's residence. The amount of the debt encumbering the property exceeds $60,000. The parties disagree over the value of the real estate, but the debtor concedes there is no equity.

Mr. Duran is delinquent on the payments due under the mortgage, both pre and post petition. The amount of the arrearage was not stated at the hearing. Before this bankruptcy case was filed, EMC accelerated the note and began power of sale foreclosure proceedings. The foreclosure sale was stayed when Mr. Duran filed his chapter 13 petition for relief on September 6, 2001.

The FHA mortgage by which EMC obtained its security interest in the real property contains a clause which states:

> Borrower does hereby mortgage, grant and convey to Lender, with the power of sale, the following described property located in Laramie County, Wyoming,
>
> Lots 6 and 6½, Block 22, Resubdivision of Lake Minnehaha Addition to the City of Cheyenne, Laramie County, Wyoming
> . . .
>
> TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.

In his proposed chapter 13 plan, the debtor proposes to bifurcate the EMC claim into a $20,000 allowed secured claim, to be paid at 8% interest over the term of the 58–month term of the plan, with an unsecured balance of $27,916.18. The plan treatment is a modification of EMC's rights as a secured creditor and a reduction in the allowed amount of the secured claim to the value of the collateral.

### Conclusions of Law

Unless the interest of EMC is adequately protected, the court is required to grant

relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1). The parties agree that whether the creditor's interest in the property is adequately protected in this case depends on whether the debtor's proposed chapter 13 plan, which treats EMC's claim under § 1322(c)(2), is confirmable.

*Section 1322(b)(2)*

■ Under § 1322(b)(2), a debtor is precluded from modifying the rights of a secured claimant if the claim is secured *only* by a security interest in real property that is the debtor's principal residence. Mr. Duran contends EMC's collateral includes other property in addition to the real property and therefore, modification is permissible.

The loan documents contain the bargained for rights of the parties. *In re Libby,* 200 B.R. 562, 567 (Bankr.D.N.J. 1996). Therefore, contrary to the debtor's assertion, the court does not find the mortgage assignment documents relevant to the inquiry.

Under the mortgage in this case, EMC's note is secured by real property and property incidental to that real estate, i.e., improvements, easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock, and all fixtures, replacements and additions. Similar language is standard in most residential mortgages and may not even reach real collateral. In this case, there is no evidence that any such collateral ever existed.

The cases interpreting § 1322(b)(2) are numerous. The court in *PNC Mortg. Co. v. Dicks,* 199 B.R. 674, 679 n. 3 (N.D.Ind. 1996) sets out an extensive compilation of cases. The majority of courts hold that standard mortgage provisions such as those in the EMC mortgage do not remove the mortgage from the protection of § 1322(b)(2). *In re Rolle,* 218 B.R. 636 (Bankr.S.D.Fla.1998) (applying Florida law

to determine whether the property was personal or real property); *In re Loper,* 222 B.R. 431 (D.Vt.1998) (finance of unrelated consumer purchases distinguished from purchase of and improvements to residence); *In re Halperin,* 170 B.R. 500, 502 (Bankr.D.Conn.1994)(where the mortgage extends to rights normally considered incidental to the ownership of realty, the protections of § 1322(b)(2) remain).

However, the tests applied to reach the conclusion are various. For example, the court in the *PNC Mortgage* case looked to whether or not the additional collateral was merely an enhancement to the real property with little or no independent value. *Id.* at 682. And, where the courts find a mortgage note was secured by collateral in addition to the real estate, the collateral is usually personal property such as appliances, machinery, furniture and equipment. *In re Johns,* 37 F.3d 1021 (3rd Cir.1994). *See, also, Lomas Mortg., Inc. v. Louis,* 82 F.3d 1 (1st Cir.1996)(income producing units remove the protection of § 1322(b)(2)); *In re Escue,* 184 B.R. 287 (Bankr.M.D.Tenn.1995) (heating, plumbing, lighting, and cooking equipment takes mortgage out of § 1322(b)(2)).

■ The provisions of § 1322(b)(2) were enacted to encourage residential mortgage financing, *In re Lee,* 215 B.R. 22, 25 (9th Cir. BAP 1997), precisely what the EMC mortgage accomplished in this case. The collateral list is standard mortgage language, and the enumerated collateral is associated with real property ownership and part of the bundle of real estate rights. For those reasons, the court rules that EMC's claim is secured only by a lien on the debtor's principal residence and no exception to § 1322(b)(2) exists.

*Section 1322(c)(2)*

■ Another exception to the anti-modification provision exists in § 1322(c)(2),

where the Code provides that if "the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5)." Under § 1325(a)(5), a plan must be confirmed if, among other things, the debtor proposes to pay a secured creditor the value of its property interest in the collateral.

Mr. Duran contends that when EMC accelerated the promissory note, it transformed the note into a single payment obligation now due, and therefore, the note is due before the final payment under the plan is due. Very little law exists on this novel argument which seems to have been encouraged by the court in the cases of *In re Winogora*, 209 B.R. 632 (Bankr.D.N.J. 1997) and *In re Nepil*, 206 B.R. 72 (Bankr. D.N.J.1997). The debtor also refers the court to the decision of *In re Young*, 199 B.R. 643 (Bankr.E.D.Tenn.1996) which falls far from the mark. The New Jersey decisions are result oriented and in this court's view, poorly reasoned. The policy, which that court sought to enforce, is instead embodied in the right to deaccelerate and cure a default while continuing payments under the original obligation.

Nevertheless, the language of the statute is plain. Section 1322(c)(2) applies when "the last payment on the *original payment schedule*" is due before the plan's final payment is due. The original payment schedule means the payment schedule contained in the promissory note and/or other security documents.

For an extensive discussion of this issue see *In re Rowe*, 239 B.R. 44 (Bankr.D.N.J. 1999), a case in which the judge disagreed with his New Jersey colleague. This court agrees with the *Rowe* court and concludes the exception contained in § 1322(c)(2) is not applicable to the acceleration scenario. The exception is intended to reach cases in which a mortgage matures by its own terms prior to the last plan payment. Those instances include the note under which a debtor owes a balloon payment under the original contract terms, is nearing the end of a mortgage amortization, or has borrowed funds on a short term note.

Under the facts of this case, the acceleration of the note in anticipation of a mortgage foreclosure does not create a single obligation debt as intended by § 1322(c)(2). The Code specifically provides for deacceleration and cure in order to provide debtors with the opportunity to retain a residence. Therefore, the court concludes Mr. Duran may not modify EMC's rights under the mortgage and note pursuant to § 1322(c)(2).

Because of the foregoing, Mr. Duran has offered no adequate protection and EMC is entitled to relief from the automatic stay. However, the court will defer a ruling for 15 days to give the debtor the opportunity to amend his chapter 13 plan by treating the EMC claim under § 1322(b)(5) and in accordance with this opinion.

IT IS, THEREFORE, ORDERED that a ruling on the motion of the EMC Mortgage Corporation is deferred pending the filing of an amendment to Mr. Duran's chapter 13 plan, without which the motion for relief from stay will be granted.