Andrew B. Altenburg, Jr., United States Bankruptcy Judge
Before the court is a Motion to Reduce Claims of RKL Financial Corporation (Doc. No, 19) (the "Motion") filed by Felix A. Mendez, Sr. (the "Debtor") in the above referenced matter. In the Motion, the Debtor argues that the secured claim of RKL Financial Corporation ("RKL") must be reduced as the attorneys' fees and costs included therein (the "Fees")[1] are excessive and unreasonable, and exceed the statutory limits set by the New Jersey Fair Foreclosure Act (the "Act") and the New Jersey Rules of Court (the "NJ Rule" or "NJ Rules"). RKL filed a cross-motion seeking relief from the automatic stay, asserting that the relief sought violates the anti-modification provision of 11 U.S.C. § 1322(b)(2), and further, that the Debtor's plan is not feasible (the "Cross-Motion").
The parties, through the various submissions and oral arguments, are asking this court to determine the reasonableness and/or limit of the Fees under the Act, the NJ Rules, state law and/or the parties' contract. However, because RKL does not consent to a loan modification, the Debtor may only address the fully matured secured claim of RKL under section 1322(c)(2), and that provides only two options: payment of the final judgment in foreclosure (limiting the Fees as allowed thereunder), or payment of the mortgage (to pay the default under the mortgage, which by its terms, provides for payment of the Fees). Regardless of which option the Debtor chooses, RKL insists that it is entitled to the Fees. Because the court chooses to abstain from determining the reasonableness and/or limit of the Fees as the state court is the better court to determine that issue, relief from the stay will be granted, limited to allowing the state court to consider the Fees under state law. Once that determination is made, this court will allow any Fees granted by the state court, and absent an amicable resolution between the parties, the Debtor will have to file a modified plan addressing RKL's allowed claim under section 1322(c)(2) of which the feasibility will be determined in the ordinary course.
Accordingly, the Motion will be held in abeyance until the state court determines the reasonableness and/or limit of the Fees. The Cross-Motion will be denied on the grounds stated but the court will vacate the automatic stay for the limited purpose of allowing the parties to proceed in state court on a determination of the amount of the Fees.
*325 JURISDICTION AND VENUE
This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), and the court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a) and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.
PROCEDURAL HISTORY
On May 7, 2018, the Debtor filed his chapter 13 case. Doc. No. 1. On July 6, 2018, the Debtor filed the Motion. RKL opposed the Motion and filed the Cross-Motion. Doc. No. 24. Debtor then filed a response to RKL's opposition and Cross-Motion, Doc. No. 25, to which RKL filed a response. Doc. No, 27. Thereafter, the court sent a letter to the parties in an attempt to narrow the issues. Doc. No, 28. The Debtor responded with a supplemental letter brief, Doc. No. 29. Likewise, RKL also filed a supplemental response. Doc. No. 30. A hearing was held on September 18, 2018, after which the court allowed the parties to submit post-hearing submissions. The deadline to submit pleadings was extended from time to time to allow the parties to amicably resolve the matter. With no settlement reached, the parties made their final submissions. Docs, No. 37 and 38. This matter is now ripe for disposition.
Pursuant to Fed. R. Bankr. P. 7052, the court issues the following findings of fact and conclusions of law.
FINDINGS OF FACT
In making these findings, the court has considered the arguments of the parties, the documentary evidence, and the totality of the record.
RKL is a secured creditor of the Debtor, Doc. No. 19, p.3. The obligation to RKL was evidenced by a fifteen-year note with a balloon payment that matured on May 7, 2014. Id. at 4. The note was secured by a mortgage against the Debtor's residence. Id. at 3.
After the Debtor failed to make the balloon payment, on December 17, 2014, RKL initiated a foreclosure action. The Debtor heavily contested this action, and due to that, plus attempts to negotiate a workout, RKL incurred extensive attorneys' fees. On April 10, 2018, RKL finally obtained a final judgment of foreclosure from the Superior Court of New Jersey (the "Final Judgment"). Id. at 4-5. The Final Judgment awarded RKL $ 161,639.05 in principal and interest, but only $ 1,766.39 of its Fees, as calculated by, or rather limited under, NJ Rule 4:42-9(a). Id. at 30. Neither the mortgage (and for that matter, the note) nor the Final Judgment clearly evidenced an intent to preserve the effect of any of the mortgage obligations post-Final Judgment. Doc. No. 24, pp. 18-31; Doc. No. 19, pp. 29-31.
In his case, the Debtor proposes a 36-month plan, which makes the last payment thereunder due in 2021. Doc. No. 2. Under the plan, the Debtor intends to address the claim of RKL through a loan modification. Id. at 2. RKL timely filed a proof of claim claiming it is owed the total of $ 197,280.18, including the $ 32,839.81[2] in Fees. Claim No. 2. The Fees represent all the fees RKL asserts it incurred in connection with enforcing its rights under the note and mortgage as opposed to the amount *326 awarded in the Final Judgment that were limited pursuant to the NJ Rules. Doc. No. 24, p.15-16.
Thereafter, the Debtor filed the Motion, arguing that RKL's request for the Fees is excessive and unreasonable and exceeds the maximum recoverable attorneys' fees and costs allowed under the Act and the NJ Rules. Doc. No, 19, p.33. The Debtor argued that pursuant to the Act, RKL may only recover a maximum of $ 1,794.41 in attorneys' fees. Accordingly, RKL's total claim should be reduced to $ 166,234.78. Id.
Of course, RKL opposed the reduction of its claim and filed the Cross-Motion. It stated "[b]y law Bankruptcy Court may not approve a bankruptcy plan filed in a Chapter 13 case that modifies the terms of a mortgage loan on the homeowner's principal residence." Doc. No. 24, p.10, RKL argued that the Motion violates Section 1322(b)(2) of the Bankruptcy Code because that section prohibits any modification of the rights of holders of claims secured solely by a security interest in real estate that is the debtor's principal residence. Id. at 11. See generally , 11 U.S.C.A. § 1322. On that basis, RKL argued that there can be no modification of its claim and therefore, its claim, including all of its Fees, must be paid. RKL declared:
Here, the Court need not consider Debtor's Motion to Reduce RKL's claim. Debtor's Plan violates 1322(b)(2) and therefore cannot be confirmed, and therefore a motion to reduce or modify the lender's claim is moot and irrelevant. The court can see that Debtor seeks, by way of a Motion to Reduce Claim, to do what bankruptcy law expressly prohibits. Debtor seeks to impermissibly modify the lender's claim, via this Motion and via his Plan which violates 1322(b)(2).
Id. at 12. For this reason, RKL also averred that the Debtor's plan is not feasible, and the Cross-Motion must be granted. In support of its position, RKL relied, inter alia, on Nobelman v. American Savings Bank, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) and In re Scarborough , 461 F.3d 406 (3d Cir. 2006).
DISCUSSION
Initially, the court entertained the Motion, believing it to be a straight-forward issue about the reasonableness of the Fees. In addition, since the court was hopeful that the parties might amicably resolve the issue, it refrained from making its decision. But when settlement negotiations failed, and the parties submitted their latest submissions, it became apparent that the reasonableness of the Fees was really a secondary issue. Rather, first, a determination had to be made as to whether the Debtor could even propose a plan that provided for a loan modification, and if so, whether the Debtor could reduce RKL's secured claim by excluding the Fees. As there appears to be a misunderstanding as to what a debtor can and cannot do under Section 1322,[3] some clarification is necessary. This requires an examination of the impact of section 1322(c) on section 1322(b)(2).
1. Section 1322(c)
Simply put, RKL's strict reading of subsection 1322(b)(2) is not supported by the law. Section 1322(b)(2) provides:
(b) Subject to subsections (a) and (c) of this section, the plan may-...
(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured *327 claims, or leave unaffected the rights of holders of any class of claims[.]
11 U.S.C.§ 1322(b)(2). (emphasis added). Hence, by its own terms, section 1322(b)(2) is subject to section 1322(c).
Subsection (c) provides:
(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law-
(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law; and
(2) in a case in which the last payment on the original payment schedule for a claim secured only by a security interest in real property that is the debtor's principal residence is due before the date on which the final payment under the plan is due, the plan may provide for the payment of the claim as modified pursuant to section 1325(a)(5) of this title.
11 U.S.C.A. § 1322(c) (emphasis added).
The reference to section 1322(b)(3) and (5) in section 1322(c)(2) is helpful in the court's analysis of how section 1322(c) allows a debtor to address home mortgage defaults under their plan. Those subsections provide:
(b) Subject to subsections (a) and (c) of this section, the plan may-...
(3) provide for the curing or waiving of any default; ...
(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]
11 U.S.C. § 1322(b)(3) and (5) (emphasis added).
" Section 1322(b)(3) does not sanction the curing or waiving of a default on a secured claim without regard to its terms. It merely permits the inclusion in a chapter 13 plan of a proposal to cure or waive the default." 8 Collier on Bankruptcy , ¶ 1322.07 (Matthew Bender 16th ed. 2019). Indeed,
Because section 1322(b)(3) sets forth the right to cure or waive a default separately from the section 1322(b)(2) right to modify, it appears that such cures or waivers are not considered modifications of claims ....
[S]ection 1322(b)(3) is applicable to all claims, including short-term debts such as ... debts that are secured only by a security interest on the debtor's principal residence and that mature prior to the date on which the final plan payment is due. Any doubt with respect to the latter category should be eliminated by section 1322(c)(1).... Thus, it is now clear that defaults on mortgages that mature or have a balloon payment prior to the conclusion of a chapter 13 plan may be cured under the plan.
Id. (emphasis added). Accordingly, a home mortgage default addressed under section 1322(b)(3) is not a modification that is prohibited by section 1322(b)(2), and under section 1322(c), debtors may address that home mortgage default through their plan.
As to section 1322(b)(5), it "is concerned with relatively long-term debt , such as a security interest or mortgage debt on *328 the residence of the debtor. It permits the debtor to take advantage of a contract repayment period which is longer than the chapter 13 extension period, which may not exceed five years under any circumstances, and may be essential if the debtor cannot pay the full allowed secured claim over the term of the plan." Collier, at ¶ 1322.09 (emphasis added). Accordingly, debtors may cure home mortgage defaults and maintain payments, whether it be long-term debt or short-term debt, unmatured, matured, those debts reduced to final judgments in foreclosure (as explained below), "or one which matures during the plan, including a mortgage with a balloon payment." Collier, at ¶ 1322.16.
" Section 1322(c)(1) provides that a default on a mortgage on the debtor's principal residence may be cured until the residence is 'sold at foreclosure sale'... The statute gives debtors a right to cure until the property has been sold, even when, under state law, they may no longer have a legal or equitable interest in the property on the petition date." Collier , at ¶ 1322.16. The Third Circuit's decision in In re Connors, 497 F.3d 314 (3d Cir. 2007), tells us that in New Jersey, the so-called "gavel rule" applies, that is, a debtor has a right to cure a default up until the moment the gavel falls at a foreclosure sale, of course, subject to a debtor's right to redemption or objection to sale. Thus, the fact that a mortgage debt has been reduced to a final judgment in foreclosure has no impact on the application of section 1322(c). See Connors , 497 F.3d 314.
Section 1322(c)(2)"provides that if the last payment on the original payment schedule for such a mortgage is due before the final payment under the plan is due the debtor may pay the claim as modified pursuant to section 1325(a)(5)." Collier , at ¶ 1322.17. Section 1322(c)(2)"encompass[es] short-term mortgages, fully matured mortgages, long-term mortgages on which the debtor has nearly completed payments, and mortgages with balloon payments." Id. (emphasis added). In addition, foreclosure judgments may also be paid under section 1322(c)(2). See In re Winogora , 209 B.R. 632, 635 (Bankr. D.N.J. 1997). However, payments on these types of obligations are limited to the life of the plan, and plans may not extend beyond five years. Id. at 636 ; see also In re Rowe , 239 B.R. 44, 50 (Bankr. D.N.J. 1999) (quoting In re Sims , 185 B.R. 853, 856 (Bankr. N.D. Ala. 1995) ; In re Escue , 184 B.R. 287, 293 (Bankr. M.D. Tenn. 1995) ).
The section 1322(c) exceptions to the anti-modification provision of section 1322(b)(2) apply two ways. First, section 1322(c)(1) permits a post-foreclosure judgment cure of mortgage defaults and reinstatement of a mortgage. See Winogora , 209 B.R. at 636 ; In re Goione , 595 B.R. 477, 487 (Bankr. D.N.J. 2019). Thus, a cure and maintenance of payments is contemplated. Importantly however, section 1322(c)(1), by its reference to section 1322(b)(3) and (5), usually applies to situations where the last payment of the secured claim on the original payment schedule is due after the date on which the final payment under a debtor's plan is due, i.e., long term debt.
On the other hand, section 1322(c)(2), "does not refer to curing defaults. It provides instead for payment of the mortgage or judgment over the duration of the plan." Winogora , 209 B.R. at 636 ; see also Escue , 184 B.R. at 293 (under (c)(2), default must be cured over the life of the plan). Additionally, section 1322(c)(2) applies where the last payment of a secured claim on the original payment schedule is due before the date on which the final payment under a debtor's plan is due, i.e. short term or matured debt. See Escue, 184 B.R. at 292 ; see also *329 Goione , 595 B.R. at 486 ; In re Kelly , 283 B.R. 808, 810 (Bankr. M.D. Fla. 2002) ( section 1322(c)(2)"leaves no doubt that a debtor in a Chapter 13 may deal with a fully matured mortgage provided the mortgage is fully paid off and satisfied before the last payment on the mortgage under the confirmed Chapter 13 Plan is due.").
Sections 1322(c)(1) and (c)(2) are inclusive of each other. In re Hicks , 138 B.R. 505, 507 (Bankr. D. Md. 1992) ("Unlike 'and,' Congress defined 'or' as 'not exclusive' under § 102 of the Bankruptcy Code. Since 'and' is not defined under the Bankruptcy Code, inverse reasoning would suggest that 'and' is inclusive in scope and does not include 'or' in its exclusive sense."). Nevertheless, section 1322(c)(2) expressly applies to secured claims on which the last payment comes due prior to the last payment under a chapter 13 plan. In looking to cure a default on a fully matured debt over a period of time, absent the consent of the creditor, a debtor does not have a choice, a debtor can only address a default under section 1322(b)(3) through section 1322(c)(2).
Without a doubt, section 1322(c) provides exceptions to the anti-modification provision of section 1322(b)(2). Accordingly, RKL's reliance on Nobelman v. American Savings Bank , 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) and In re Scarborough 461 F.3d 406 (3d Cir. 2006), is misplaced as those decisions are based solely on section 1322(b)(2) without considering the exceptions provided for by section 1322(c). Collier , at ¶ 1322.17. Contrary to RKL's assertion, here the Debtor may provide for payment of its claim through his plan.
2. Absent Consent of RKL to a Loan Modification, the Debtor Can Only Proceed Under Section 1322(c)(2)
In the present case, it cannot be disputed that section 1322(c)(2) applies. The last payment here was/is clearly due before the date on which the final payment under the plan is due in 2021, whether one interprets the "last payment on original payment schedule is due" as the last payment scheduled on a loan document, see Rowe , 239 B.R. 44, 50,[4] or as the date of final judgment. See In re Nepil, 206 B.R. 72 (Bankr.D.N.J.1997). The mortgage matured years ago and the Final Judgment was entered well prepetition. The Final Judgment by its terms entitles RKL to immediately recovery, by way of sheriff's sale, of the amount due. N.J.S.A. 2A:50-36 ; Matter of Roach , 824 F.2d 1370, 1378 (3d Cir. 1987) (superseded by 11 U.S.C. § 1322(c) on other grounds) ("The judgment thus declares a sum certain immediately due."). And so, section 1322(c)(2) applies.
As a consequence, under section 1322(c)(2), the Debtor only has two options absent RKL's consent to a loan modification-payment over the duration of the plan of: 1) the Final Judgment; or 2) the entire amount of the fully matured, defaulted mortgage. Winogora , 209 B.R. at 636. That's it. But the Debtor's plan appears to interweave the two by addressing the default under the mortgage through seeking a loan modification, while at the same time seeking to enforce the limitation on the Fees in the Final Judgment, plus post-judgment interest as allowable by the NJ Rules. See Doc. No. 38. This doesn't work. Without the consent of RKL, there can be no meshing of the options, and the *330 Debtor must choose which he wishes to do. Which he chooses affects the Fees differently.[5]
a. Payment of the Final Judgment Option
Should the Debtor choose to pay RKL under the Final Judgment, the law is clear: the Fees are limited solely to the amount set forth therein, plus post-judgment interest as allowed by the NJ Rules. The court recognizes that RKL could seek to amend the Final Judgment in state court (this court cannot amend the Final Judgment) and/or obtain an order for the Debtor to pay additional sums under the NJ Rules, but that has not been pursued. If the Final Judgment is amended and/or additional sums are awarded, certainly those sums would be included in the total amount due to RKL in this case. See e.g., In re Shandar Holding Corp., No. 12-7336 FLW, 2013 WL 3810574 (D.N.J. July 22, 2013). Absent that, the amount set forth in the Final Judgment is the amount to be paid if the Debtor chooses the payment of the Final Judgment option.
Barring further state court order, the Fees are limited to the amount set forth in the Final Judgment pursuant to the doctrine of merger. The merger doctrine was aptly addressed recently in Goione , 595 B.R. 477. While that case addressed an issue unrelated to the issue in this case, Judge Kaplan's analysis of the merger doctrine bears repeating and incorporation here:
As a general principal, it is elementary that a judgment settles everything involved in the right to recover - all matters that were raised, and all those that might have been asserted. The original cause of action is absorbed into the judgment and becomes a new obligation. In re Stendardo , 991 F.2d 1089, 1094-95 (3d Cir. 1993), as amended (June 21, 1993). Thus, in the context of a foreclosure action, a mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished, at which point it ceases to exist. Id. at 1095. Thereafter, a mortgage can no longer serve as a basis for determining the obligations of the parties. Instead, litigants must look to the judgment. Id. (citing In re Presque Isle Apartments, 112 B.R. 744, 747 (Bankr. W.D. Pa. 1990) ; see also In re Roach , 824 F.2d 1370, 1377 (3d Cir. 1987)....
There is, however, a key exception to the merger doctrine. "Parties to a mortgage may rely upon a particular provision post-judgment if the mortgage clearly evidences their intent to preserve the effectiveness of that provision post-judgment." Stendardo , 991 F.2d at 1095 ; See also, e.g., Presque Isle, 112 B.R. at 747 ("Once a claim is reduced to judgment, the legal rate of interest applies unless the documents evidence a clear intent to continue the contractual rate of interest post-judgment.").
In In re Stendardo , the Third Circuit recognized this exception in holding that obligations under a mortgage are merged into a foreclosure judgment unless "the mortgage clearly evidences [an] intent to preserve the effectiveness of that provision postjudgment." Stendardo , 991 F.2d at 1094. Notwithstanding this principle, the Stendardo court concluded that *331 the creditor in that case was not entitled to reimbursement because the debtors' obligation under the mortgage ended when the mortgage merged into the judgment. Id. at 1095-96.
This Court is cognizant that Stendardo involved the application of Pennsylvania law. However, the Third Circuit has also addressed this issue in the context of a New Jersey proceeding. In A & P Diversified , the Third Circuit held that, "the mortgage merged into the final judgment of foreclosure and precluded any recovery of attorneys' fees." In re A & P Diversified Techs. Realty, Inc., 467 F.3d 337, 343 (3d Cir. 2006). In doing so, the Third Circuit followed existing New Jersey decisions which recognized that upon foreclosure, the mortgage merges into final judgment of foreclosure and "every party ... has the right to assume that such decree represents the final determination of the debt." Colonial Bldg.-Loan Ass'n v. Mongiello Bros., Inc., 120 N.J. Eq. 270, 276, 184 A. 635 (Ch. 1936) ; see Also Washington Mut., FA v. Wroblewski , 396 N.J. Super. 144, 149, 933 A.2d 32 (Ch. Div. 2007)....
... In A & P Diversified , the Third Circuit reasoned that when the creditor moved for attorneys fees pursuant to § 506(b), it was no longer the beneficiary of an agreement under which a claim for attorneys fees arose, which was the basis for a § 506(b) award. A & P Diversified , 467 F.3d at 343. The court then examined the mortgage to determine whether the exception to the merger doctrine applied. Id. Again, the Third Circuit denied the requested fees and expenses, stating that,
the mortgage here does not clearly evidence an intent to preserve the effectiveness of the attorneys' fees and expenses provision following the entry of the foreclosure judgment....
Goione, 595 B.R. at 483-84 (some citations omitted). Despite the adoption of section 1322(c)(2), the merger doctrine still applies. See Winogora , 209 B.R. at 636 ; see also Shandar Holding Corp. , 2013 WL 3810574 ; In re Lipscomb , No. 05 18722 JHW, 2006 WL 4452988, at *1 (Bankr. D.N.J. May 17, 2006).
In this case, neither the mortgage nor the Final Judgment clearly evidences an intent to preserve the effect of any of the mortgage obligations post-Final Judgment, thus there is no exception to the merger doctrine. The mortgage merged into the Final Judgment, extinguishing the mortgage contract. The mortgage can no longer serve as a basis for determining the obligations of the parties. To the extent the Debtor seeks to pay the Final Judgment only, RKL is bound to the attorneys' fees awarded therein. But of course, RKL does have an opportunity in state court to amend the Final Judgment or obtain an order to pay additional sums under NJ Rules because the doctrine of merger does not prevent it from doing so. See Shandar Holding Corp. , 2013 WL 3810574. Any additional amount awarded would become part of RKL's claim. Id. But until then, should the Debtor seek to repay the Final Judgment, the Fees are limited thereto.
b. Payment of the Matured Mortgage Option
Here we have a mortgage that fully matured prepetition, and a default exists. There is a question of whether such a mortgage falls under the section 1322(c)(2) exception. For example, in Goione , 595 B.R. 477, Judge Kaplan found that under section 1322(c)(2)"there are only three scenarios in which [ section 1322(c)(2) ] is applicable: (1) short term *332 mortgages, (2) long term mortgages on which the debtor is within five years of completing payments; and (3) mortgages with balloon payments." 595 B.R. at 486. But this court respectfully suggests that a mortgage that fully matured prepetition and is in default, like here, creates a fourth scenario under section 1322(c)(2). Similarly, Collier suggests section 1322(c)(2) encompasses mortgages that fully matured prepetition. ¶ 1322.17. This makes sense because certainly a mortgage that fully matured prepetition is a secured claim whose last payment comes due prior to the end of a chapter 13 plan. So, by its own terms, section 1322(c)(2) applies since sections 1322(c)(1) and (c)(2) are inclusive of each other and section 1322(c)(2) expressly applies to secured claims on which the last payment comes due prior to the last payment under a chapter 13 plan . At the same time, the incorporation of section 1322(b)(5) into section 1322(c)(1) has no impact because in a fully matured debt situation, there are no payments to maintain and there are no payments due after the final plan payment as required by that section. Accordingly, a debtor can only address a default on a fully matured debt under section 1322(b)(3) through section 1322(c)(2). Indeed, the court cannot not think of a time when section 1322(c)(1) would apply to a fully matured mortgage. Finally, other courts have held that section 1322(c)(2) applies to a prepetition fully matured secured obligation. See Nepil, 206 B.R. at 77 (citing In re Escue, 184 B.R. 287, 293 (Bankr. M.D. Tenn. 1995) ); In re Sarkese, 189 B.R. 531, 534 (Bankr. M.D. Fla. 1995) ; In re Lobue, 189 B.R. 216, 218 (Bankr. S.D. Fla. 1995) ). Accordingly, this court finds that section 1322(c)(2) applies to a mortgage that fully matured prepetition and is in default
In lieu of paying a foreclosure judgment on a mortgage that fully matured prepetition, section 1322(c)(2) affords a debtor an opportunity to pay the default over the life of a plan. As explained above, that payment is not a modification of the secured claim. Collier , at ¶ 1322.07. But by addressing a default under a fully matured mortgage by curing same over the life of a plan, a debtor cannot ignore the mortgage's terms. Id. (" Section 1322(b)(3) does not sanction the curing or waiving of a default on a secured claim without regard to its terms"). Indeed, all provisions of that mortgage, including allowance of attorneys' fees, are reinstated. See Winogora, 209 B.R. at 636 ; Goione , 595 B.R. at 487. Because a debtor seeks to cure the default rather than satisfy the judgment, the merger doctrine does not apply. Consequently, a debtor is bound by all terms of the mortgage including payment of attorney fees.[6]
Interestingly, here the Debtor's plan proposes a loan modification with RKL. The Debtor has also applied for loss mitigation through the court's program in an effort to negotiate that loan modification. But how can one modify a loan that does not exist due to the entry of the Final Judgment and the application of the merger doctrine? Clearly, in order to do a loan modification, a loan would have to exist. To that end, for a loan to exist, the Debtor must acknowledge the existence of the mortgage and seek to address the default thereunder. Payment of the default under the mortgage means reinstatement of all of the mortgage terms, including RKL's right *333 to the Fees. Yet, the Debtor wishes to limit the Fees to the amount set forth in the Final Judgment. The Debtor cannot have his cake and eat it too. He cannot effectively reinstate the mortgage to cure the default thereunder through a loan modification while at the same time enforce the Final Judgment and/or ignore the terms of the mortgage. He can either limit the Fees through payment of the Final Judgment or address the default under the mortgage he seeks to modify, effectively resulting in a reinstatement of its terms. Whether by repaying the loan or seeking a loan modification (which would require RKL's consent) the Debtor would be required to pay the Fees because the loan documents provide for it.[7] The court also suspects, as it suggested earlier, Doc. No. 28, that RKL will not agree to a loan modification without the repayment of the Fees, and this court cannot require it to do so.
The Debtor relies on In re Hatala, 295 B.R. 62 (Bankr. D.N.J. 2003), to support his position that RKL's claim should be limited to the Fees set forth in the Final Judgment. However, this court is not bound or persuaded by that decision and disagrees with it. First, that case is distinguishable as it was dealing with cure and reinstatement of a long-term debt under section 1322(c)(1) unlike this case where there can be no cure, reinstatement and maintaining of payments. Next, the court in Hatala subsequently recognized that "[t]here may be some question as to whether Hatala is still good law ..." In re Boyd, 401 B.R. 137, 141, n.3 (Bankr. D.N.J. 2008). Finally, the remaining cases the Debtor relies on are distinguishable from the facts here, irrelevant to the issue presented, unpersuasive and/or not binding on this court. Simply put, the court does not believe one can gain the extraordinary benefit of reinstating a fully matured mortgage for purposes of seeking a loan modification while at the same time avoiding the burden of that mortgage's terms, including the payment of a lender's attorneys' fees.
3. Determination of the Reasonableness of the Fees
Here the parties invite this court to determine the entitlement to and/or the reasonableness of the Fees in excess of those awarded in the Final Judgment.[8] Simply put, the merger doctrine prevents the court from doing so, as the mortgage provided the basis for shifting fees to the borrower, but the merger doctrine provides that the mortgage no longer exists.[9] In re A & P Diversified Technologies Realty, Inc., 467 F.3d 337, 341 (3d Cir. 2006). Nor did the mortgage provide for post-judgment fee-shifting. Any additional fees, if warranted, may only be obtained by RKL convincing the state court to amend the Final Judgment, and/or by obtaining an order to pay additional sums pursuant to the NJ Rules, a determination that is well within the province of the state court. Accordingly, the state court, not this bankruptcy court, should be the one to hear RKL's application for additional fees and expenses not included in the Final Judgment.
*334 See Stewart Title Guar. Co. v. Lewis , 347 N.J. Super 127, 128-29, 788 A.2d 941 (Ch. Div. 2001).
Even if this court could determine the additional fees, it is more appropriate for the state court to do so. See Shandar Holding Corp. , 2013 WL 3810574. The court may permissively abstain sua sponte. Bricker v. Martin, 265 Fed. Appx. 141, 141 (3d Cir. 2008). Permissive abstention "allows a court to abstain from hearing a particular matter arising under title 11 or arising in or related to a case under title 11, in the interest of justice or in the interest of comity with state courts or respect for state law." In re Vanhook , 468 B.R. 694, 700 (Bankr. D.N.J. 2012). New Jersey courts consider several factors in determining when to abstain. See Shalom Torah Centers v. Philadelphia Indem. Ins. Cos. , No. 10-6766 (FLW), 2011 WL 1322295, at *4 (D.N.J. Mar. 31, 2011). The courts recognize, however, that not all factors need to be considered in all cases and that their importance will "vary with the particular circumstances of each case" such that "no one factor is necessarily determinative." Id. at *4.
The factors present in this case warranting abstention are: the issue raised must be resolved before the Debtor can confirm his plan and therefore, the outcome has an effect on the efficient administration of the bankruptcy estate; because of the issuance of the Final Judgment and the effect of the merger doctrine, the award of additional fees is solely an issue of state law; the argument presented is difficult (there is a presumption that the fees allowed by the NJ Rules are reasonable but RKL asserts that state law allows it to obtain additional fees); both the Debtor and RKL have cited several cases in which New Jersey courts have allowed and disallowed fees, creating an uncertainty; there is a question whether the Fees are limited under the mortgage itself due to the use of the language "permitted by Rules of Court"; a related state court foreclosure matter already exists thus the issue can easily be addressed there; comity favors abstention; but for the bankruptcy of the Debtor, this court would not have jurisdiction over the issue; there is no issue with severing the state law claim from the core proceeding; any decision by the state court can be enforced by this court; the prejudice to the parties in having the state court decide the issue is remote; and finally, the state court is an expert on state court foreclosure law and certainly has a better understanding than this court of what types of fees are reasonable in a foreclosure action. This is a bankruptcy court not a state court foreclosure court. How does the court know whether the $ 32,000 in Fees initially requested in RKL's proof of claim, or its recent agreement to reduce the Fees to $ 12,000, Doc. No. 37, are reasonable? The Fees may be reasonable. The reduction and reduced amount may also be reasonable. But this court has nothing to measure the Fees or the reduced amount against because it is never involved in foreclosure litigation and does not know the costs usually associated therewith. As such, this court will abstain from determining the reasonableness of the Fees.
4. Relief From Stay
Relief from the automatic stay is not warranted on the grounds asserted by RKL. RKL's misunderstanding of section 1322(b)(2) by ignoring the exceptions thereto does not provide "cause" for relief from the automatic stay. Further, it is too early to determine whether the Debtor's plan is feasible. That is a confirmation issue. It is possible for the Debtor to modify his plan that currently provides for a refinance or sale of the property. Moreover, *335 now that it has been determined how RKL's claim can be treated, perhaps there will be a compromise. Granting relief from the stay on plan feasibility grounds at this time would be premature. Since no cause exists on the grounds asserted by RKL, its Cross-Motion must be denied.
Nevertheless, unless the parties can resolve their differences and be civil, under either option that the Debtor chooses, it would be necessary for the court to grant RKL relief from the automatic stay to give it the opportunity in state court to determine the appropriateness and/or reasonableness of the Fees and/or to amend the Final Judgment and/or obtain an order to pay additional sums under the NJ Rules due to the court invoking abstention. Any additional amounts granted by the state court will become part of RKL's allowed secured claim.
CONCLUSION
Because the court chooses to abstain from determining the reasonableness and/or limit of the Fees as the state court is the better court to determine that issue, relief from the stay will be granted limited to allowing the state court to consider the Fees under state law. Once that determination is made, this court will allow any Fees granted by the state court, and absent an amicable resolution between the parties, the Debtor will have to file a modified plan addressing RKL's allowed claim under section 1322(c)(2) of which the feasibility will be determined in the ordinary course.
Accordingly, the Motion will be held in abeyance until the state court determines the reasonableness and/or limit of the Fees or the parties resolve. The Cross-Motion is denied on the grounds stated but the court will vacate the automatic stay for the limited purpose of allowing the state court to proceed with its determination on the amount of the Fees.
An appropriate judgment has been entered consistent with this decision.
The court reserves the right to revise its findings of fact and conclusions of law.

RKL additionally believes it is also now entitled to additional fees associated with this bankruptcy case. For that reason, all fees requested by RKL will be collectively referred to as the "Fees."

Through a later submission, RKL has offered to reduce the Fees even further.

See Doc. Nos. 2, 24 and 27.

The court is inclined to agree with the reasoning of Rowe and similar cases like Goione , 595 B.R. 477, that the "last payment on the original payment schedule" means the actual original schedule provided for under the mortgage rather than the acceleration date or foreclosure judgment date that occurred due to a debtor's prepetition default.

Although the Debtor has conceded at times to payment of a minimal portion of RKL's additional fees, by doing so, he is effectively meshing the contract provision allowing reasonable fees while at the same time seeking to bind RKL to the Final Judgment. But because of the Final Judgment, no contract exists as explained in Part 2.a., below.

This result begs the question, why would a debtor pay a mortgage obligation and all related obligations in full rather than pay a discounted foreclosure judgment? Perhaps the answer is that by addressing the mortgage obligation rather than the foreclosure judgment, a debtor hopes, like the Debtor proposes here, to get a loan modification or possibly refinance to pay the debt out over a longer period of time. But this is merely supposition.

Interestingly, the mortgage here allows recovery of the Fees as "permitted by Rules of Court." Doc. No. 19, p. 25, par. 21. There may be an argument as to whether that term in the mortgage itself limits the Fees.

Although in his last pleading, the Debtor appears to now take a steadfast approach that the fees and interest rate are limited to only those allowed by the NJ Rules.

Courts determining the reasonableness of fees allowed under a contract do so because a contract exists. No contract exists when the merger doctrine applies. See In re Stendardo , 991 F.2d at 1095 ; Goione , 595 B.R. at 484.